UNITED STATES of America, Plaintiff,

v.

TOWN OF LOWELL, INDIANA, et al, Defendants.

Civ. No. H83–425.

United States District Court,
N.D. Indiana,
Hammond Division.

Aug. 26, 1985.

John E. Hughes, Hoeppner, Wagner & Evans, Valparaiso, Ind., for defendants.

F. Henry Habicht, II, Asst. Atty. Gen., Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., R. Lawrence Steele, Jr., U.S. Atty., N.D. Indiana, by Charles B. Miller, for Andrew B. Baker, Jr., Asst. U.S. Atty., Hammond, Ind.

John R. Barker, Atty. Environmental Enforcement Section, Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., Arthur E. Smith, Jr., James D. Brusslan, Asst. Regional Counsel, U.S. Environmental Protection Agency, Region V, Chicago, Ill., for plaintiffs.

## ORDER

MOODY, District Judge.

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment. The Plaintiff, United States of America, alleges the defendants have violated provisions of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* This motion, filed July 6, 1985, addresses only the issue of liability, and does not address the remedies sought by the Plaintiff.

The Federal Water Pollution Control Act ("FWPCA") was passed by Congress in 1972. Its goal was to eliminate the discharge of pollutants into navigable waters by 1985. To accomplish this end, the FWPCA established a regulatory system to control the discharge of pollutants from point sources. The Act defines "discharge of pollutants" as "any addition of any pollutant from any point source" and defines "point source" as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrating animal feeding operation, or vessel or other floating craft, from which pollutants are discharged."

Although the FWPCA prohibits the discharge of pollutants, Section 1311(a) authorizes the Administrator to establish permissible effluent limitations for different categories of discharges. These effluent limitations have been developed, not because of any inherent right to use the nation's waterways for the purpose of disposing wastes, but because technical limitations necessitate a practical approach to effluent reduction. *Natural Resources Defense Council, Inc. v. Costle,* 568 F.2d 1369, 1374–75 (D.C.Cir.1977). In order to regulate and enforce these effluent limitations, the National Pollutant Discharge Elimination System Permit ("NPDES permit") program was established to allow a potential

would-be discharger the only escape from an otherwise total prohibition imposed by the FWPCA. The NPDES permit prescribes specific restrictions with which the permit-holder is required to conform. Any discharge of a pollutant not in compliance with the conditions or limitations of such a permit is unlawful. *Costle*, at 1374.

The FWPCA allows a state to assume the administration of the permit program for discharges into the waters within its jurisdiction. The State of Indiana assumed control of the NPDES permit program on January 1, 1975 through the Indiana Stream Pollution Control Board ("ISPCB").

On July 11, 1973 the Defendant Towns of Lowell and Cedar Lake entered into an agreement whereby Lowell agreed to construct an interceptor sewer and sewage treatment plant, to be used by the communities of Lowell and Cedar Lake to treat and dispose of their sanitary sewage. Cedar Lake agreed to contribute capital costs for their allotted capacity of the plant. Lowell was issued a NPDES permit by the ISPCB on October 4, 1979, authorizing the discharge of limited quantities of pollutants into Cedar Creek. The parameters (any substance or pollutant characteristic controlled by the permit) are required to be measured by the permit-holder Lowell five (5) times a week, with the exception of flow, which is measured continuously.[1] In accordance with this measuring obligation imposed by the permit, Lowell submitted discharge monitoring reports ("DMRs to the ISPCB") which specified the level of each parameter discharged into Cedar Creek. According to the DMRs submitted by Lowell since February 1, 1980, the parameters of flow exceeded the permit limitation 43 times, BOD was exceeded 119 times, and the level of TSS was exceeded 40 times, for a total of 202 permit violations. The Town of Lowell alleges that these violations were caused in part by inflow and infiltration of excessive ground and rain water entering the plant from the Cedar Lake flume.

## MOTION TO STRIKE THE AFFIDAVIT OF PETER OLSEN

Defendants have raised a motion to strike the affidavit of Peter Olsen, specifically, they dispute allegations asserted in the affidavit. They allege that portions of the affidavit are inadmissible or irrelevant. They also question the basis of Mr. Olsen's "conclusions". Generally, motions to strike are made only in regard to matters contained in the pleadings, and affidavits submitted in support of a motion are clearly not within that category. *Friedlander v. Troutman, Sanders, Lockerman & Ashmore*, 595 F.Supp. 1442, 1443 (N.D.Ga. 1984). In the Sixth Circuit case of *Wimberly v. Clark Controller Co.*, 364 F.2d 225, (6th Cir.1966) the Court noted:

> At best, the motion to strike an issue as to the admissibility of the evidence offered in the affidavit, and the competency of the affiant to testify to the matters stated therein. These issues are present in every instance when affidavits are filed pursuant to Rule 56. The Court has discretion to disregard those facts which would not be admissible in evidence, and to rely on those facts which are competent evidence.

*Wimberly*, at 227.

In accordance with the *Wimberly* decision, this Court will disregard those portions of Mr. Olsen's affidavit which may contain inadmissible evidence or otherwise violate Rule 56. *See Oxford Life Ins. Co. v. United States*, 574 F.Supp. 1417, 1422 (D.Ariz.1985); *Chambless v. Masters, Mates & Pilots Pension Plan*, 571 F.Supp. 1430, 1459 (S.D.N.Y.1983); *Cohen v. Ayers*, 449 F.Supp. 298, 321 (N.D.Ill.1978).

---

1. The effluent limitations imposed by NPDES permit in 00Z3621, issued to the Town of Lowell, are as follows:

| Parameter | Limits |
| --- | --- |
| Flow | 2.0 million gallons per day ("MGD") |

| Parameter | Limits |
| --- | --- |
| Biochemical Oxygen Demand ("BOD") | 15 milligrams per liter ("mg/l"), 10 Mg/l monthly average, and 166 pounds per day ("lbs./Day") monthly average. |
| Total Suspended Solids ("TSS") | 15 mg/l weekly average, 10 mg/l monthly average, and 166 lbs./Day monthly average. |

■ The mere denial, however, of allegations raised in an affidavit does not in and of itself create a genuine issue of fact. Such denials must be accompanied by statements of facts which would be admissible into evidence at a hearing. *Fifty Associates v. Prudential Ins. Co. of America*, 450 F.2d 1007, 1010 (9th Cir.1971); *Piantadosi v. Loew's, Inc.*, 137 F.2d 534, 536 (9th Cir.1943).

■ Mr. Olsen is employed by the EPA to review the DMRs submitted by permitholders. The affidavit contains Olsen's summary of DMRs submitted by Lowell to the EPA. Clearly, the affidavit contains information within Olsen's personal knowledge, and which he is competent to testify. Therefore, the Court will allow the affidavit to stand.

## SHOULD THE EPA BE PRECLUDED FROM PURSUING THIS ACTION

■ The Defendants assert that prior proceedings before the ISPCB, an interlocutory consent decree entered into by Lowell and Cedar Lake in January, 1982, which was later extended into April of 1985, should have a preclusive effect on the EPA's pursuit of this action. This claim is groundless. The EPA invokes jurisdiction under section 1342(i) of the FWPCA, which provides, "Nothing in this section shall be construed to limit the authority of the Administrator to take action pursuant to section 1319 of this title". Section 1319 provides in pertinent part, "The Administrator is authorized to commence a civil action for appropriate relief, including a permanent or temporary injunction, for any violation for which he is authorized to issue a compliance order under subsection (a) in this section." The case relied upon by Defendants, *United States v. ITT Rayonier, Inc.*, 627 F.2d 996 (9th Cir.1980), actually supports the proposition that Federal enforcement is not precluded by a state agency proceeding. Citing Congressional intent that federal authority not be delegated to the states, *Rayonier* instructs that the degree of power vested in the states to issue NPDES permits is derived from the FWPCA and is revocable by the EPA. Further, "if the EPA is dissatisfied with state enforcement efforts or lack thereof it can revoke the permit issuing authority or bring an independent action in a federal court." *Rayonier*, at 1002, *United States v. Lehigh Portland Cement Co.*, No. C84–3030, slip op. (N.D.Iowa, December 12, 1984). Since the consent decree between the Defendants and the ISPCB is not a determinative finding of fact, and the violations of the NPDES permit persist despite this agreement, the EPA's interest in bringing an independent action is proper.

Congress empowered the EPA to vindicate violations of the FWPCA. In the instant case, the EPA is acting in its sovereign capacity, performing a governmental function to protect an important public interest. *Utah Power & Light Co. v. United States*, 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791 (1917). Even though the State of Indiana has assumed the authority over the NPDES permit program, the EPA is not precluded from stepping in to enforce the FWPCA. *United States v. Chevron U.S.A., Inc.*, 19 E.R.C. 1462, 1464 (W.D. Tex.1983), *Lehigh*, at 7. Accordingly, there is no material issue of fact as to whether the plaintiff is precluded from pursuing this action.

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff seeks a declaratory judgment under Fed.R.Civ.P. Rule 56(c). It contends that the DMRs submitted by Lowell in accordance with section I.B.Z. of the NPDES permit issued to them, which indicated 202 reported effluent levels in excess of the authorized limitations, are a *per se* violation of the FWPCA. To support this contention, Plaintiffs cite substantial case law which stands for the proposition that "[r]eports which are required to be kept by law (such as DMR's ...) may be used as admissions to establish a defendant's civil liability." *Student Public Interest Research Group of New Jersey v. Monsanto Co.*, 600 F.Supp. 1479, 1485 (D.N.J.1985); *United States v. Ward*, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980); *Student*

*Public Interest Group v. Fritzsche Dodge & Olcott*, 579 F.Supp. 1528, 1538 (D.N.J. 1984).

Defendants do not dispute that they exceeded the effluent limitations imposed by the permit on several occasions. They maintain, however, that they were acting in compliance with the terms and conditions of the permit when these alleged violations occurred. Defendants rely on a provision in the permit which allows for the by-passing of the waste treatment plant in the event of excessive storm drainage or some other emergency situation where such a diversion would be necessary to prevent loss of life, severe property damage, or damage to the facility. Lowell contends that Cedar Lake's inflow and infiltration problem contributed significantly to the plant's failure to meet the discharge limitations and other requirements of NPDES permit No. IN00Z3621. They contend that the excess rain-fall runoff from Cedar Lake would place Lowell within the by-pass exception.

Defendants further claim that a question of fact exists concerning the patterns of the alleged violations. Specifically, they allege that part Ia.1 of the permit allows the flow to exceed the monthly average of 2.0 mgd as long as the TSS and BOD levels are met. Therefore, they argue it is significant whether the flow violations occurred in conjunction with TSS and BOD violations, or whether there were occasions when flow violations occurred alone.

■ The Court does not accept Defendant' arguments. Summary judgment is appropriate on the issue of liability for violations of the FWPCA, particularly since NPDES enforcement actions are based on strict liability, thus making good faith and intent irrelevant. *Monsanto*, at 1485. *Fritzsche*, at 1539. *United States v. Earth*

*Sciences, Inc.*, 599 F.2d 368, 374 (10th Cir. 1979). Section 1311 (a) of the FWPCA clearly states a violation of the NPDES permit is a violation of the Act. *EPA v. Cal. Ex. rel. State Water Resources Control Board*, 426 U.S. 200, 205, 96 S.Ct. 2022, 2025, 48 L.Ed.2d 578 (1976); *Costle*, at 1374; *Monsanto*, at 1458. The DMR's submitted by Lowell show the effluent which passed through the treatment plant consistently violated the acceptable permit parameters.[2]

Following construction of the bypass, untreated waste was diverted into Cedar Creek. This practice began in 1982 and continues to this day, being utilized as frequently as 26 days during a one-month period. The defendants would have us believe that this non-conformance with the effluent limitations was unavoidable to prevent loss of life or severe property damage. (Lowell Answer to Interrogatory No. 28). The frequency of these violations certainly would not comport to the emergency situation scenario suggested in the permit exception. Therefore, in light of the policy enunciated by Congress, "one purpose [of the bill] ... is to avoid the lengthy fact finding, investigations at the time of enforcement. Enforcement of violations of requirements of this Act should be based on relatively narrow fact situations requiring a minimum of discretionary decision-making or delay." *Fritzsche*, quoting S.Rep. No. 414, 92d Cong., 1st Sess. 64, U.S.Code Cong. & Admin.News 1972, pp. 3668, 3730, at 1538. Accordingly, we grant plaintiff's motion for summary judgment on count 2 of the complaint. The Court being duly advised, it is hereby ORDERED that the plaintiff's Motion for Partial Summary Judgment be and it is hereby GRANTED.

**2.** Defendant Town of Cedar Lake alleges that summary judgment is improper against it. Cedar Lake contends that all the violations pertain to "operational aspects" of the treatment plant and consequently, plaintiff has failed to show that Cedar Lake caused the permit exceedances. To the contrary, the FWPCA is a strict liability statute where liability is imposed without regard to fault. The degree to which Cedar Lake caused the exceedances is a factual issue which is simply not relevant here. Further, Cedar Lake has failed to raise a material issue of fact as to its argument that the permit does not necessarily limit the volume of flow from the treatment plant. Consequently, summary judgment is appropriate.