**UNITED STATES of America, et al., Plaintiffs**

v.

**CITY OF TOLEDO, Defendant.**

No. 3:91CV7646.

United States District Court, N.D. Ohio, Western Division.

March 31, 1994.

605

Verne K. Armstrong, Holly Taft Sydlow, Office of the U.S. Atty., Toledo, OH, Steven D. Ellis, Lisa A. Cherup, Kurt F. Zimmerman, Dept. of Justice, Environmental Enforcement Section, Washington, DC, and Constance Ann Snyder, Meister, Ayers & Meister, Toledo, OH, for the U.S.

Margaret A. Malone, Office of the Atty. Gen., and Joan R. Kooistra, Susan E. Ashbrook, Office of the Asst. Atty. Gen., Environmental Enforcement Section, Columbus, OH, for Ohio, State of.

Charles R. McElwee, Van Carson, Squire, Sanders & Dempsey, Cleveland, OH, and Keith A. Wilkowski, Dept. of Law, Toledo, OH, for Toledo, City of.

### MEMORANDUM AND ORDER

JOHN W. POTTER, Senior District Judge:

This is a suit by the United States Environmental Protection Agency (EPA) and State of Ohio Environmental Protection Agency (State EPA) against the City of Toledo in which plaintiffs allege that the City's Bay View Waste Water Treatment Plant has been operated in violation of the Federal Clean Water Act, 33 U.S.C. § 1251 et seq.

Pending is plaintiff EPA's Second Motion for Partial Summary Judgment on Liability (Doc. 122). For the reasons that follow, the motion, which relates to claims added by the

plaintiff's amended complaint, shall be denied in part and granted in part.

The counts to which this motion relates allege that the City has: (a) violated effluent limits prescribed by its 1991 National Pollution Discharge Elimination System (NPDES) Permit; (b) improperly, and in violation of its 1985 Modified and 1991 Permits, bypassed untreated and partially treated sewage; (c) in violation of the 1985 and 1985 Modified Permits failed to comply with sampling and reporting requirements; and (d) for several years did not have a properly certified plant manager, despite mandates in the 1985 Modified and 1991 Permits that the plant be under such management.

Filed herewith is a Memorandum and Order granting plaintiff's first Motion for Partial Summary Judgment, relating to the claims in plaintiff's original complaint 867 F.Supp. 598. To the extent that rulings in the Memorandum and Order are pertinent with regard to the pending motion, they are incorporated by cross-reference.

### A. Exceedences

Plaintiff asserts that effluent limits contained in the 1991 NPDES Permit were exceeded as set forth in Exhibit L (Doc. 122, Exh. L). That list shows that limits for ammonia were exceeded on eighty-six occasions, toxicity twice, and zinc once.

The City does not dispute the accuracy of the data contained in the list or that the limits of its permit were exceeded. It contends, however, that compliance was excused by the Director of the State EPA in a document entitled Director's Final Findings and Orders (DFFO) issued on May 31, 1991 (Doc. 142, Exh. G, Attachment 7). There appears to be no dispute between the parties that, if the DFFO is controlling, rather than requirements of the NPDES Permit, the plaintiff is not entitled to summary judgment.

Plaintiff argues that the DFFO "is merely an administrative enforcement decision issued by the State [that] does not modify or change the permit in any way and has no legal effect on any efforts the United States may make to enforce the terms of the Permit." (Doc. 122 at 20.)

The City, in response, argues: (a) the DFFO "suspended" the limitations imposed by the NPDES Permit and that such suspension was permissible under Ohio Rev.Code § 6111.03(H); (b) pursuant to 33 U.S.C. § 1319(g)(6)(A)(iii), issuance of the DFFO preempts the EPA's present enforcement efforts; and (c) the plaintiff is equitably estopped from asserting its claims (Doc. 142 at 7–20).

Plaintiff, in reply: (a) asserts the supremacy of the permit over any alteration by the State EPA absent compliance with applicable provisions of and procedures provided by the Code of Federal Regulations; (b) finds no authority in Ohio Rev.Code § 6111.03(H) to suspend a provision of the NPDES Permit; and (c) disputes the availability or applicability of the doctrine of equitable estoppel.

The Court finds defendant's contentions without merit. As argued by the plaintiff, the EPA retains authority to enforce the provisions of federal law whenever the agency determines that such actions are necessary in order to enforce the Clean Water Act: "Nothing in this section [NPDES] shall be construed to limit the authority of the [EPA] Administrator to take action pursuant to Section 1319 [Enforcement] of this title." 33 U.S.C. § 1342(i). Under 33 U.S.C. § 1319(a)(1), (3), the EPA can institute judicial action whenever the Administrator finds a violation of the Act.

One effect of these provisions is to ensure that state agencies, for whatever reason, do not directly or indirectly defeat implementation of the provisions of the Clean Water Act. To accomplish that purpose, the EPA must have the authority and ability to respond to violations of the Act (i.e., violations of a NPDES Permit), even though such violations have been sanctioned by a state agency. *United States v. Lowell,* 637 F.Supp. 254, 257 (N.D.Ind.1985).

In light of the supremacy of federal law in this area, a state cannot suspend the operation of the terms and conditions of a NPDES Permit without following appropriate procedures. *United States v. Ohio Edison Co.,* 725 F.Supp. 928 (N.D.Ohio 1989); *United States v. Sharon Steel Corp.,* 30

Env't. Rep. 1778 (N.D. Ohio 1989) (Doc. 122, Exh. Y); *United States v. City of Bedford,* No. C85–2897 (N.D. Ohio July 14, 1988) (Doc. 122, Exh. Y). Contrary to the City's contentions, the Court does not find authority for the proposition that a DFFO constitutes a basis for suspension of a Permit's conditions in Ohio Rev.Code § 6111.03(H)(4). This absence of specific authority is noteworthy in light of the specific provisions of 40 C.F.R. § 124.5 (Modification, Revocation, and Reissuance, or Termination of Permits).

■ To the extent that the City claims that the plaintiff's claims are barred by operation of 33 U.S.C. § 1319(g)(6)(A)(iii), which bars actions for civil penalties where the State has issued a final order that is not subject to further judicial review and the violator has paid a penalty assessed under that section, the Court finds that provision to be inapplicable. There is no evidence in the record that a penalty was assessed or paid. Thus, § 1319(g)(6)(A)(iii) does not bar this action.[1]

■ The City's contentions regarding equitable estoppel are likewise unavailing. The elements of equitable estoppel were set forth by the Sixth Circuit in *Apponi v. Sunshine Biscuits, Inc.* 809 F.2d 1210, 1217 (6th Cir. 1987):

(1) conduct or language amounting to a representation of material facts; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend the representation to be acted on or act such that the party asserting the estoppel has a right to believe it so intended; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must detrimentally and justifiably rely on the representation.

The City's principal contention is that, once having been granted the exception by the DFFO, it was entitled to rely on that document and should not now be held accountable for its actions.

Both parties note that, in order to give rise to equitable estoppel, the City must show that the plaintiff engaged in "affirmative misconduct." *See United States v. Guy,* 978 F.2d 934, 937 (6th Cir.1992). Although the City has developed a record of systemic indifference to the situation caused to permit holders by the EPA's failure to clarify the lawfulness of reliance on DFFOs, the Court does not find that this meets the demanding standard of *affirmative* misconduct.

To establish such misconduct in the context of this litigation, the City would, in the Court's opinion, have to show that from the outset or very shortly thereafter the EPA knew that the City was not in compliance, affirmatively caused the City to believe that its actions were lawful so far as the EPA was concerned, and anticipated that it would institute legal action of the sort presently before the Court.

■ Although the doctrine of equitable estoppel may be used in circumstances of deliberate and egregious misconduct where a governmental agency has acted affirmatively, it is not available where the agency has simply acted in an indifferent, passive, or negligent manner. The record in this case shows, at worst, inaction on the part of the EPA and State EPA, despite awareness of the circumstances and the risks that they posed for the City and similarly situated permit holders. That inaction was not, however, purposefully undertaken to cause harm or injury to the City. It reflects, rather, the difficulties encountered by the agencies as they sought to resolve complex regulatory and policy issues.

Litigants seeking to impose estoppel against the government carry a heavy burden, and courts are "very reluctant" to apply estoppel doctrines in such cases. *Reynolds v. Commissioner of Internal Revenue,* 861 F.2d 469, 474 (6th cir.1988). This is especially so when the action upon which the opposing party asserts estoppel was taken by the government in its sovereign rather than proprietary role. *Housing Authority of Elliott County v. Bergland,* 749 F.2d 1184, 1190 (6th cir.1984).

---

1. It appears that the City agrees. In its surreply, the city purports to withdraw its "possible defense based on § 309(g)(5)(A)(iii) [sic] of the Clean Water Act." The Court assumes that the intended reference was to 33 U.S.C. § 1319(g)(6)(A)(iii).

At the very minimum, estoppel must rest upon affirmative misconduct of the government. *State Bank of Fraser v. United States,* 861 F.2d 954, 961 (6th cir.1988).

No doubt exists that USEPA exercises sovereign rather than proprietary powers when enforcing the CWA. Moreover, the only USEPA misconduct identified by MPC in its brief is "indifference and inaction amounting to affirmative misconduct." This does not qualify as a sufficient allegation or demonstration of affirmative misconduct given MPC's heavy burden. *Bergland,* 749 F.2d at 1190. Mere inaction by USEPA in the face of known NPDES permit violations is not affirmative misconduct upon which equitable estoppel will lie. *Amoco Oil Co.,* 580 F.Supp. [1042] at 1050. [W.D.Mo.1984]. *Accord, United States v. Louisiana–Pacific Corp.,* 682 F.Supp. 1122, 1139–41 (D.Colo.1987) (Clean Air Act).

*United States v. Menominee,* 727 F.Supp. 1110, 1121–22 (W.D.Mich.1989).

■ The City's good faith reliance on the DFFO and the reasonableness of its belief that it was complying with the law, which should be presumed at this point, are not a defense to the plaintiff's complaint and motion for summary judgment. They are, however, factors that may well weigh heavily in the City's favor when consideration is given to the penalty, if any, to impose on the City for its exceedences. *Ohio Edison,* 725 F.Supp. at 933–34. Plaintiff's motion for summary judgment with regard to its claim for exceedences will be granted.

### B. Bypasses

Plaintiff alleges that since January, 1987 the City has on approximately 218 occasions discharged raw or partially treated sewage. Such discharge is called a bypass. Plaintiff alleges that the bypasses were not permitted under the City's NPDES Permit. In addition, plaintiff also alleges that, with regard to bypasses before August 8, 1991, the City failed to provide timely notice of the bypass incidents as required by the Permit.

■ The applicable regulation regarding the bypass issues raised by plaintiff's motion for partial summary judgment provides:

*Prohibition of Bypass.* (i) Bypass is prohibited, and the [EPA] Director may take enforcement action against a permittee for bypass, unless:

(A) Bypass was unavoidable to prevent loss of life, personal injury, or severe property damage;

(B) There were no feasible alternatives to the bypass ... and

(C) The permittee submitted notices as required under paragraph (m)(3) of this section.

40 C.F.R. § 122.41(m)(4). As pointed out by the plaintiff, this provision is written in the conjunctive, so that a bypass can result in civil penalty unless it was unavoidable, there were no feasible alternatives, and appropriate notice was provided.

### i. Notice

■ By regulation, notice of an "anticipated" bypass is to be provided, if possible, at least ten days prior to the bypass. 40 C.F.R. § 122.41(m)(3). If the bypass is "unanticipated," § 122.41(*l*)(6) requires oral notice within twenty-four hours of awareness of the bypass; follow-up written notice must be submitted within five days thereafter.

As noted, no notices were filed as to any bypasses before the incident of August 8, 1991. According to the City, its officials were unaware of the need to provide notice because they believed the need for bypassing was generally known and had been communicated in its Permit modification application submitted in 1989. As a result of such "notice," the City contends that all of bypasses were "anticipated."

This is a strained interpretation of the structure for notice established by the regulations. According to the City, mere passing mention that bypasses will be occurring "to exercise more control and reduce solids 'washouts' that were common during heavy rainstorms," fulfilled the mandate of providing advance notice of "unanticipated" bypasses.

It did not. To the extent that that reference provided any notice to the State EPA, it was merely that bypasses of an indefinite number would occur at unknown times and be of an indeterminate volume and unpredictable environmental significance. In other words, that "notice" merely informed the State EPA that the City anticipated that it would experience unanticipated bypasses.

Were the City's reading of the regulation accurate, it would have the effect of abrogating the regulatory scheme. By the simple device of an obscure comment in their application materials, permittees would relieve themselves of ever having to provide specific notice of unanticipated bypasses. Without the prompt notice envisioned by the regulations, the agency's ability to fulfill its oversight function could be impaired significantly, and the risk of environmental injury would be enhanced, rather than deterred.

The Court concludes that, as a matter of law, the "notice" given by the City in its Permit modification materials does not constitute the notice of unanticipated bypasses envisioned by the applicable regulations. Plaintiff's motion for summary judgment on this issue is well taken.

### ii. Unavoidable Bypasses

Plaintiff contends that, whenever a bypass occurred during a day on which the plant treats less than its average daily design capacity of 130 million gallons, such bypass could not have been "unavoidable" as required by 40 C.F.R. § 122.41(m)(4)(i) if civil penalty is to be avoided.

The City, in response, asserts that storms create the need to bypass. It has submitted evidence, albeit conclusory, that the bypasses resulting in this lawsuit were "only a last resort to avoid equipment damage, flooding of the citizens' basements, losing plant biomass ... [and] causing adverse effects to the plant." (Doc. 142, Exh. N at 104.) Plaintiff replies that this conclusory allegation is not sufficient to create a genuine dispute about the necessity for the bypasses.

The lawfulness of any bypass should depend on its particular circumstances. Plaintiff's blanket approach does not take any of the potential or possible circumstances into account; it seeks a fact-specific adjudication on the basis of a mechanistic and undeviating formula. Absent a showing that such an approach has been taken and upheld in other cases, the Court finds considerable merit in the City's responsive (though hypothetical) example and discussion. Because plaintiff's mechanistic approach is flawed, it has failed to show that it is entitled to judgment as a matter of law.[2] That failing is not overcome by the sheer number of bypass incidents. Though that number raises concerns, those concerns do not, in turn, rise to the level of material facts about each of the incidents. And, moreover, the City's response, despite its conclusory quality, suffices to create an issue of disputed and material fact about the extent to which the bypasses were or were not justified under the regulatory scheme.

Plaintiff's motion for summary judgment with regard to the lawfulness of the bypasses at issue will be denied without prejudice to renew such motion when and as a more substantial factual basis for doing so is established.

### C. Monitoring and Reporting

Plaintiff alleges that from March, 1988, until November, 1992, the City violated its obligation to monitor and report about certain pollutants. According to the plaintiff, there were approximately 1,368 such violations. (Doc. 122, Exh. U.)

The Permits require monthly reports to the State EPA and prescribe the contents of the reports. The City does not dispute that accuracy of the data on which the plaintiff makes its claim.

To the extent that no data was given, the violation is clear and plaintiff is entitled to summary judgment.

In the other instances, information was provided, but it was not the information

---

2. By this ruling, the Court is not resolving the parties' dispute about the allocation of the burden of proof. Rather, the ruling is based on the fact that the plaintiff has failed thus far to show that there are undisputed material facts which entitle it to judgment as a matter of law on the issue of the lawfulness of the bypasses.

called for by the Permit. The information that was provided in lieu of the information that was supposed to have been provided amount to codes which indicated that data was lost, equipment was out of service, data was not valid, or a sample was not taken.

The Court agrees with plaintiff that the reason for the failure to report the requisite information is not a defense to its claim of noncompliance. Those reasons are matters for mitigation of the penalty, if any, to be imposed as a result of the failure to report essential information. *See Sierra Club v. Simkins Industries, Inc.,* 847 F.2d 1109, 1115 (4th Cir.1988).

The Court concludes, accordingly, that the plaintiff is entitled to summary judgment on the issue of noncompliance with the reporting requirement.

### D. Uncertified Operator

 It is undisputed that the requirement in the Permits that the plant's manager be certified by the State EPA as a Class IV Wastewater Treatment Works Operator was violated until June 10, 1992. The only dispute relates to the beginning of the period for which the plaintiff may seek penalties.

The claim based on the failure to employ a certified operator was first asserted in the amended complaint. Plaintiff argues that the claim relates back to the date of filing of the original complaint. The City disagrees, and argues that the issue of the lack of a certified operator is a new claim based on different facts than those alleged in the original complaint. If so, then, pursuant to Fed. R.Civ.P. 15(c), the new claim does not relate back to the date of the original complaint. *See, e.g., Koon v. Lakeshore Contractors,* 128 F.R.D. 650, 653 (W.D.Mich.1988), *aff'd,* 889 F.2d 1087 (6th Cir.1989).

The Court agrees with the City that this is a new claim and should not relate back to the date of the original complaint. The original complaint alleges deficiencies in the operation of the plant, not in the status of the plant's principal operator. There is no essential or even apparent causal connection between the circumstances giving rise to the original complaint and the lack of State EPA certification.

Because there is no nexus between the claims in the original complaint and the claim based on the lack of proper certification, that claim does not relate back to the original filing date.

The Court also concludes, however, that the claim relates back to the date on which leave was sought to file the amended complaint. *Mayes v. AT & T Info. Systems,* 867 F.2d 1172, 1173 (8th Cir.1989). The period for which penalties may be imposed commences, accordingly, on November 15, 1987.

THEREFORE, for the foregoing reasons, good cause appearing, it is

ORDERED that plaintiff's second motion for partial summary judgment be denied as to the claim alleging unlawful bypasses and granted as to all other claims; and it is

FURTHER ORDERED that this cause be set for a status pretrial before Magistrate Judge James G. Carr.