UNITED STATES of America,
et al., Plaintiffs,

v.

CITY OF TOLEDO, Defendant.

No. 3:91CV7646.

United States District Court,
N.D. Ohio,
Western Division.

March 31, 1994.

See also, 867 F.Supp. 603.

Verne K. Armstrong, Holly Taft Sydlow, Office of the U.S. Atty., Toledo, OH, Steven D. Ellis, Lisa A. Cherup, Kurt F. Zimmerman, Dept. of Justice, Environmental Enforcement Section, Washington, DC, and

Constance Ann Snyder, Meister, Ayers & Meister, Toledo, OH, for the U.S.

Margaret A. Malone, Office of the Atty. Gen., and Joan R. Kooistra, and Susan E. Ashbrook, Office of the Asst. Atty. Gen., Environmental Enforcement Section, Columbus, OH, for Ohio, State of.

Charles R. McElwee, Van Carson, Squire, Sanders & Dempsey, Cleveland, OH, and Keith A. Wilkowski, City of Toledo Dept. of Law, Toledo, OH, for Toledo, City of.

## MEMORANDUM AND ORDER

JOHN W. POTTER, Senior District Judge.

This is an action brought by the United States Environmental Protection Agency (EPA) and the Ohio Environmental Protection Agency (State EPA) against the City of Toledo (City). The complaint alleges that discharges of various pollutants from the City's Bay View Wastewater Treatment Plant October 1, 1986 through April 30, 1991, exceeded limits imposed by permits issued by the State EPA, and thus, the Federal Clean Water Act, 33 U.S.C. § 1251, et seq.

The EPA has filed a motion for partial summary judgment (Doc. 69), to which the City has responded (Doc. 84), and the plaintiff has replied (Doc. 94). Defendant has also filed a surreply (Doc. 106) and the State EPA has filed a memorandum supporting the EPA's motion (Doc. 99).

For the reasons that follow, the motion will be granted.

### 1. Factual Background

In order to discharge pollutants, the City was required to obtain permits under the National Pollutant Discharge Elimination System (NPDES). Those permits, which were issued by the State EPA pursuant to the Clean Water Act, set effluent limits (i.e., limitations on the extent of pollution discharge).

The NPDES permits also require self-monitoring and periodic Discharge Monitoring Reports (DMRs), which, under the system established in this case, were known as Monthly Operating Reports (MORs). The reports must be signed by a qualified person who certifies that information being reported is true, accurate, and complete. 40 C.F.R. § 122.22. In this case, the MORs were filed with the State EPA.

Plaintiff's complaint is based on a comparison of the MORs with the terms and conditions of the NPDES permits. In response to plaintiffs' contention that such comparison shows nearly 200 violations during the period covered by the complaint, the City asserts: (a) the time frames used by the EPA to determine whether violations occurred is inconsistent with the time frames used by the City in its MORs and the State EPA, which reviewed and responded to the MORs; (b) genuine disputes of fact exist about the accuracy of the MORs in light of errors in measurement and defects in the measuring equipment; (c) genuine factual disputes exist with regard to the City's "upset" defense.

In its reply (and, to some extent, in its original memorandum), plaintiff successfully addresses each of these contentions. In addition, as the plaintiff points out, the City has at no point denied that violations occurred.

### 2. Legal Issues

#### a. Time Frames

■ The NPDES permits provide that compliance is evaluated in the context of seven day and thirty day periods. The City contends that these straightforward requirements have been misapplied by the plaintiff and that such misapplication creates a genuine dispute of material fact concerning the plaintiff's claim that the City has violated the substantive terms and conditions of the permits.

With regard to the seven day period, the permits provide, in pertinent part, that the "'7–day load limitation' is the total discharge by weight during any 7–day period" (emphasis supplied) and the "'7–day concentration limitation' means the arithmetic average of all the determinations of daily concentration limitation made during the 7 day period" (emphasis supplied).[1] The thirty day

---

1. "Load" based limitations are the actual quantity by weight of a particular pollutant discharged

during a specified period. Such limitations are generally expressed in terms of kilograms per

periods are similarly defined (i.e., by reference to "any" thirty day period).

When compiling its list of violations, the plaintiff began its "seven day" review with the report covering October 1, 1986, so that the first seven day period ran through October 7, 1986; the second seven day period went from October 8 through October 15, 1986; the third period ran from October 16 through October 23, 1986; the fourth period covered October 23 through October 30, 1986; and the fifth period encompassed October 31 through November 6, 1986.

In its dealings with the State EPA, to which the City was reporting, it would start a new seven day period on the first of each month. Thus, except in February, there would be days left over that were not covered by the City's seven day periods.

To compute thirty day periods, the plaintiff used the method used by the City in its reports to the State EPA. Those reports (and, thus, plaintiff's determination of violation of thirty day limits) were based on a calendar month, rather than intervals of exactly thirty days.

The City makes much of plaintiff's "manipulative" manner of applying the seven day time frame and the fact that different degrees of violation, and in some instances, no violations, would be found to have occurred if its approach, as endorsed by the State EPA's acquiescence as the reports were being filed, were followed.

In view of the differences resulting from the distinct time frames, the City claims that there is a genuine dispute of material fact that forecloses summary judgment; namely, what is the "correct" time frame.

The Court disagrees with the City's premise and its conclusion. First, neither time frame is necessarily incorrect. The permit expressly refers to "any" seven day (and "any" thirty day) period. In light of that express term, the plaintiff clearly could make its computations as it did. Second, this is not a dispute of fact; it is a disagreement that is amenable to a ruling of law.

■ Third, and perhaps most important, the City has not shown that, even if the dispute about the appropriate seven day time frame is one of fact, it is a *material* fact. It is not a material fact because, despite the vigor and length with which the City asserts its position, the City has made no contention whatsoever that the number of violations would change, much less change significantly, if plaintiff used the wrong method in making its computations.

■ The sole case cited by the City in support of its contention, *Northwest Environmental Defense Ctr. v. Unified Sewerage Agency of Washington County*, No. 88–1128–FR, 1989 WL 81608 (D.Or. July 7, 1989), is neither on point nor persuasive. That decision is not on point because the terms of the permit in that case differed from the terms of the permit in this case. It is not persuasive because the court in that case fails to recognize that the determination of the meaning of a permit's terms is a matter of law, not of fact. Thus, even if there is a dispute about an ambiguous term, that term remains unaltered by such dispute, and it is for the court, not a jury, to adjudicate that dispute. That decision is likewise unpersuasive because its holding (that differing methods of computation foreclosed summary judgment) is unaccompanied by any explanation of the reasons for that holding.

Thus, even if that decision were not distinguishable, it would not be controlling or authoritative. The Court concludes, accordingly, that there is no genuine dispute of material fact with regard to the violations of the seven-day concentration limitations.

Plaintiff is willing to accept the City's method of computing seven day loading averages and abandon its original method of computing violations of thirty day averages and thirty day concentration and loading limitations and has recharacterized its "not to exceed" violations.

A revised list of violations has been submitted by the plaintiff in its reply to the

day (Kg/day). "Concentration" based limitations refer to the strength of the pollutant in a discharge. Such limitations are generally expressed in terms of milligrams per liter (mg/l). Load is a function of the concentration times the total flow for the particular day.

City's response to the motion for partial summary judgment. The Court finds that there is no genuine dispute about any of these violations, and the plaintiff, accordingly, is entitled to summary judgment as to the facts asserted in that exhibit.

### b. Sampling Error Defense

■ The City asserts that there is a genuine dispute of material fact with regard to much of the data reflected in its MORs, because of its belief that such data was not accurate as reported. Thus, it argues, summary judgment cannot be granted. As the plaintiff points out, to the extent that there is a dispute about the accuracy of the data, that dispute relates only to 16 of the 191 violations alleged by the plaintiff.

The affidavit submitted in support of the claim of inaccuracy (Doc. 84, Exh. A, Attachment H40) is, as plaintiff contends, conclusory and speculative. The fact that equipment was found to have been operating improperly on one day does not necessarily mean that it performed inadequately at any earlier time; the affiant's suggestion that such was the case is, without a substantially stronger basis for his opinion, speculative.

■ Even where concurrently obtained samples from other testing devices showed different values, it is appropriate, in the Court's view, to accept the reported values as the accurate value. There is no indication that the City treated them as otherwise prior to this lawsuit. The City was required to certify the accuracy of the data in its MOR. *See* 40 C.F.R. § 122.22. Its post-hoc rationalization, presented in the form of an unsubstantiated, speculative affidavit, contradicts the prior certifications and, in the Court's opinion, does not meet the requirement of Fed.R.Civ.P. 56(e) that evidence offered in support of an opposition to summary judgment be admissible.

Where a permittee gathers inconsistent data, it should resolve any inconsistency as soon as possible. If it does not do so, and reports a higher value, it should not be heard later to dispute the accuracy of its own work and reports. Certainly, last minute speculation of the sort set forth in the City's affidavit fails to create a genuine issue of material fact concerning the sixteen violations that it seeks to call into question.

The more appropriate time for asserting such error is, in the Court's view, during the penalty phase. If at that point there appears to be a firm basis for concluding that the reading as reported was substantially inaccurate and if there is an acceptable explanation for the failure to have complied with the requirement of making accurate reports, that factor can be taken into consideration when deciding whether a penalty should be imposed.

The policy of speedy determination and adjudication of violations would hardly be well served if claims such as those made by the City were sufficient to deflect plaintiff's motion for summary judgment. As have several others, this Court concludes that the City's insufficiently supported claims of inaccurate readings and reports do not create a genuine issue of material fact. *See, e.g., Atlantic States Legal Foundation v. Al Tech Specialty Steel Corp.*, 635 F.Supp. 284, 289 (N.D.N.Y.1986); *Student Public Interest Research Group, Inc. v. P.D. Oil & Chemical Storage, Inc.*, 627 F.Supp. 1074, 1089 (D.N.J. 1986).

### c. Upset Defense

■ Plaintiff asserts that the "upset defense" set forth in 40 C.F.R. § 122.41(n)(1) is unavailable to defendant. An upset is defined in the regulation as: "an exceptional incident in which there is unintentional and temporary noncompliance with the technology based permit effluent limitations because of factors beyond the reasonable control of the permittee." *Id.*

To prevail on its upset defense, the City must show: (a) occurrence of an upset and identification of its cause; (b) proper operation of the facility at the time; (c) appropriate notice to the regulating authority; and (d) compliance with required remedial measures. 40 C.F.R. § 122.42(n)(3).

As plaintiff points out, the City has not shown which violations are attributable to upsets, much less the cause for those incidents. It likewise has not shown that the plant was operating properly at the time of the alleged, but unspecified upsets. There is

no indication in the City's materials that it provided the requisite notice to the State EPA.

The claim of upset(s) cannot, accordingly, defeat the plaintiff's motion for partial summary judgment.

THEREFORE, for the foregoing reasons, good cause appearing, it is

ORDERED that plaintiff's motion for partial summary judgment be, and the same hereby is, granted.