**UNITED STATES of America, et al., Plaintiffs,**

v.

**The CITY OF TOLEDO, OHIO, a Municipal Corporation, Defendant.**

**No. 3:91CV7646.**

United States District Court, N.D. Ohio, Western Division.

Aug. 6, 1999.

See also 867 F.Supp. 595, 867 F.Supp. 598, 867 F.Supp. 603.

Lisa A. Cherup, Steven D. Ellis, Kurt F. Zimmerman, Department of Justice, Environmental Enforcement Section, Washington, DC, Holly Taft Sydlow, Office of the U.S. Attorney, Toledo, OH, for Plaintiffs.

Van Carson, Charles R. McElwee, Squire, Sanders & Dempsey, Cleveland, OH, for defendant.

Keith A. Wilkowski, Cooper, Walinski & Cramer, Toledo, OH, for cross-defendant.

Joseph P. Koncelik, Joan R. Kooistra, Office of the Attorney General, Environmental Enforcement Section, Margaret A. Malone, Office of the Attorney General, Columbus, OH, Margaret A. Malone, Office of Atty. Gen., Columbus, OH, for cross-claimant.

## ORDER

CARR, District Judge.

This is an action in which the United States Environmental Protection Agency (US–EPA) and the Ohio Environmental Protection Agency (OH–EPA) sued the City of Toledo for alleged violations of the Clean Water Act. 33 U.S.C. § 1251. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and 33 U.S.C. § 1319(b). Pending is plaintiffs' joint motion for partial summary judgment. (Doc. 229, 232). For the following reasons, plaintiffs' joint motion shall be granted.

### Background

Defendant operates the Bay View Wastewater Treatment Plant. During some routine wet weather events,[1] the Bay View Plant discharges wastewater, with minimal treatment, through a bypass outfall directly into the Maumee River. Plaintiffs allege that these bypasses violate the Bay View Plant's discharge permit and the Clean Water Act. The bypass provision in the discharge permit provides:

11. *UNAUTHORIZED DISCHARGES.*

A. Bypassing or diverting of wastewater from the treatment works is prohibited unless:

1. Bypass was unavoidable to prevent loss of life, personal injury, or severe property damage;

2. *There were no feasible alternatives to the bypass,* such as the use of auxiliary treatment facilities, retention of untreated wastes, or maintenance during normal periods of downtime. This condition is not satisfied if adequate back up equipment should have been installed in the exercise of reasonable engineering judgment to prevent a bypass which occurred during normal periods of equipment downtime or preventive maintenance; and

3. The permitted submitted notices as required under paragraph D. of this section.

---

1. A "wet weather event," as used in this opinion, refers to any change in the weather (such as a storm or thaw) that increases flow to the Bay View Plant.

(Doc. 231 Ex. 1 at 29–30) (emphasis supplied). This language is taken from the US–EPA bypass regulation. *See* 40 C.F.R. § 122.41(m)(4)(i).

The issue before me is purely legal, requiring an interpretation of the phrase "feasible alternatives." According to plaintiffs, "feasible alternatives" include increases in plant capacity through construction of additional treatment units or storage equipment. Defendant, however, contends that the phrase refers only to existing treatment or storage equipment which is physically available at the time of a bypass.

Plaintiffs move for partial summary judgment, asking me to hold that any bypass which occurs because of inadequate plant capacity is unauthorized to the extent that there are "feasible alternatives" including the placement or construction of additional treatment units or storage equipment. Accordingly, plaintiffs ask me to hold that such bypasses violate the Bay View Plant's permit and the Clean Water Act.

### Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).[2] The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### Analysis

Defendant does not disagree that the Bay View Plant may only discharge pollutants into the Maumee River in compliance with its discharge permit. Likewise, it does not dispute plaintiffs' contention that a bypass is prohibited if there are feasible alternatives. Rather, the dispute in this case hinges on interpretation of the phrase "feasible alternatives." Plaintiffs contend that the phrase includes increases in plant capacity through construction of additional treatment units or storage equipment. Defendant contends that the phrase refers only to existing treatment or storage equipment which is physically available at the time of a bypass.

Plaintiffs argue that their view, as an agency interpretation, controls my inquiry. They point out that at least one court accorded deference to the US–EPA's interpretation of a bypass provision. *See United States v. Weitzenhoff*, 35 F.3d 1275, 1288–89 (9th Cir.1993) ("The EPA's inter-

---

**2.** "The standard for partial summary judgment on an issue is equivalent to the standard for summary judgment." *Symbol Techs, Inc.*

*v. Metrologic Instruments, Inc.*, 771 F.Supp. 1390, 1395 (D.N.J.1991).

pretation of its bypass regulation is entitled to considerable weight.").

Defendant argues that plaintiffs' interpretation does not control because it is "plainly erroneous or inconsistent with the regulation." *Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (quoting *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 359, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989)). *See also Martin v. OSHA,* 499 U.S. 144, 151–52, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991). Further, defendant contends that I should give plaintiffs' interpretation little deference because it is inconsistent with previous US–EPA positions.[3] *See Immigration & Naturalization Serv. v. Cardoza–Fonseca,* 480 U.S. 421, 446 n. 30, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987).

### 1. Plainly Erroneous or Inconsistent with the Regulation

To support their interpretation, plaintiffs rely on the plain language of the bypass provision in the Bay View Plant's permit, the structure and context of the provision, and case law. Defendant contends that, notwithstanding plaintiffs' arguments, this interpretation is plainly erroneous or inconsistent with the regulation.

### A. Plain Language

■ According to plaintiffs, the plain language of the bypass provision supports their interpretation of "feasible alternatives." First, plaintiffs point out that no language excludes alternatives which can be constructed to avoid a future bypass. Defendant responds that the provision, while it does not exclude such activity, also does not explicitly call for construction, addition, or installation. The provision's silence is inconclusive.

Next, plaintiffs contend that the examples of "feasible alternatives" support their reading. Defendant argues the opposite, relying on the same examples to support its interpretation. There are three examples in the bypass provision: "use of auxiliary treatment facilities, retention of untreated wastes, and maintenance during normal periods of downtime." (Doc. 231 Ex. 1 at 30). Plaintiffs claim that these examples can require advance planning and do not limit alternatives to those physically available at the time of a bypass. Defendant insists that, to be "use[d]," facilities or capacity must exist at the time of a decision to bypass.

I disagree with defendant. First, the phrase "use of" modifies "auxiliary treatment facilities," and not "retention of untreated wastes." (*Id.*) Thus, defendant's argument fails at the outset with respect to increased storage capacity. Moreover, at the time when a bypass becomes necessary, it is too late to resort to "maintenance during normal periods of downtime" and this example necessarily requires advance planning. Defendant's argument fails in its entirety, and I find that the examples support plaintiffs' interpretation.

In light of the examples and the fact that there is no language restricting "feasible alternatives" to those available at the time of a decision to bypass, I see no reason to read such a restriction into the permit. Plain language is not a basis for finding plaintiffs' interpretation to be plainly erroneous or inconsistent with the regulation.

### B. Structure and Context

Next, Plaintiffs contend that the structure and context of the bypass provision

---

3. Defendant also argues that I should accord less deference to an agency position that is "unreasonable." Defendant's argument relating to this issue focuses on the difficulty of deciding on "feasible alternatives" in light of the open ended nature of the regulation. Open ended regulatory and permit requirements, such as broad narrative discharge limitations, have been upheld by courts despite similar claims of lack of enforceability or fear of abuse by citizen group plaintiffs. *See PUD No. 1 of Jefferson County v. Washington Dept. of Ecology,* 511 U.S. 700, 715–16, 114 S.Ct. 1900, 128 L.Ed.2d 716 (1994); *Northwest Environmental Advocates v. City of Portland,* 56 F.3d 979, 987–89 (9th Cir.1995). This argument is unavailing.

support their interpretation of "feasible alternatives." The Bay View Plant's permit contains no general authorization to bypass pollutants. Instead, the permit expressly prohibits bypasses except in "emergency conditions as authorized by federal regulation at 40 CFR. 122.41(m) or Part III, Item 11, General Conditions of this permit." (Doc. 231 Ex. 1 at 11). According to plaintiffs, the regulation contemplates bypassing during emergencies, not during routine wet weather events.

■ Defendant argues that the bypass provision's focus is strictly operational, requiring permittees only to operate their entire treatment facilities at all times. Thus, defendant contends that because the Bay View Plant operates all its available equipment, the provision does not apply to the current situation. In support of this proposition, defendant relies on *Natural Resources Defense Council Inc. v. U.S. E.P.A*, 822 F.2d 104, 122 (D.C.Cir.1987) and US–EPA Comments, specifically 44 Fed.Reg. 32854, 32906 (June 7, 1979) and 49 Fed.Reg. 37998, 38036 (September 26, 1984). While these sources show that one focus of the bypass prohibition is to ensure the constant operation of all existing equipment, they also show that another focus is to avoid any violations of permit effluent limitations. *See Natural Resources*, 822 F.2d at 124 ("the nature of the statutory scheme ... pushes all dischargers to achieve ever-increasing efficiencies and improvements in pollution control"); 49 Fed.Reg. 37998, 38036 (September 26, 1984) ("The bypass provision was intended to accomplish two purposes. First, it excused certain unavoidable or justifiable violations of permit effluent limitations, provided the permittee could meet the bypass criteria. Second, it required that permittees operate control equipment at all times."). The bypass provision is designed to reach situations like the present case, and defendant's argument is unavailing.

Defendant also argues that because the US–EPA adopted a "should have been installed" standard with respect to normal periods of equipment downtime or preventative maintenance, the same standard does not apply in other bypassing contexts. Defendant offers no legislative history in support of this argument. The proffered history discusses a language change from "could have installed" to "should have been installed in the exercise of reasonable engineering judgment." (Doc. 235 Ex. 12). This history relates to clarification of existing language, not creation of a special proviso. Without legislative history about the reasons for adopting the original "could have installed" standard, defendant's argument is unpersuasive.

The structure and context of the bypass provision are not a basis for finding that plaintiffs' interpretation is plainly erroneous or inconsistent with the regulation.

### C. Case Law

Finally, plaintiffs claim that case law supports their interpretation of the bypass provision. First, they rely on *United States v. Penn Hills*, 6 F.Supp.2d 432, 437 (W.D.Pa.1998), for the contention that construction of additional equipment is a feasible alternative to bypassing. Defendant correctly points out, however, that the *Penn Hills* opinion does not state whether the bypassing at issue in that case was due to wet weather events or maintenance. If the latter, back up equipment was directly mandated by the US–EPA bypass regulation. Absent further information about the underlying facts in *Penn Hills*, I cannot conclude whether that case relates to the issue before me.

Second, plaintiffs rely on *Save Our Bays and Beaches v. City and County of Honolulu*, 904 F.Supp. 1098, 1134–36 (D.Haw. 1994), for the proposition that a municipality is liable for bypasses due to inadequate wet weather treatment capacity. Defendant distinguishes this case, pointing out that the court in *Save Our Bays* specifically addressed "feasible alternatives" only in the context of repair and maintenance bypasses, not wet weather event bypasses.

The *Save Our Bays* opinion does not directly discuss the issue before me.

Third, plaintiffs rely on *Sierra Club v. Union Oil Co.*, 716 F.Supp. 429, 434–37 (N.D.Cal.1988), for their claim that exceptions in the bypass prohibition cannot justify repeated, routine bypassing due to inadequate wet weather event capacity. Defendant correctly notes, however, that the bypass provision at issue did not contain a "feasible alternatives" provision. Thus, the court in *Union Oil* also did not directly address the issue before me.

Finally, plaintiffs rely on *United States v. Town of Lowell*, 637 F.Supp. 254, 258 (N.D.Ind.1985), for the proposition that bypasses to avoid loss of life, severe property damage, or damage to the facility are only authorized for emergency situations and are unauthorized when they occur frequently. Defendant distinguishes this case as well, arguing that this holding addresses the first element of the bypass exception and does not apply to the "feasible alternatives" element. The decision in *Town of Lowell* likewise does not directly address the issue before me.

Although defendant has shown that none of these decisions directly addresses the issue before me, defendant offers no other opinions directly on point or which suggest that I should find in defendant's, rather than plaintiffs', favor. The *Penn Hills, Save Our Bays, Union Oil,* and *Town of Lowell* courts prohibited the bypasses at issue and construed the bypass exception narrowly. *See also United States v. Scharton*, 285 U.S. 518, 521–22, 52 S.Ct. 416, 76 L.Ed. 917 (1932) (stating that exception clauses should be narrowly construed). Plaintiffs' interpretation comports with the rationale adopted by those courts, even if the decisions are not directly on point. The available case law, accordingly, does not provide a basis for finding plaintiffs' interpretation to be plainly erroneous or inconsistent with the regulation.

## 2. Inconsistent with Prior Agency Interpretations

Defendant also argues that plaintiffs' interpretation of "feasible alternatives" is inconsistent with prior agency interpretations. Defendant, however, while faulting plaintiffs for citing no supportive literature or legislative history, cites no contrary evidence. Plaintiffs have, in addition, detailed several occasions when the US–EPA adopted positions consistent with the position taken here. *See, e.g.*, (Doc. 235 Ex. 8, EPA, Combined Sewer Overflows: Guidance for Permit Writers (Sept.1995) at 4–37). I find that plaintiffs' interpretation of the phrase "feasible alternatives" is consistent with prior interpretations.

## Conclusion

Plaintiffs' interpretation of the phrase "feasible alternatives" is neither plainly erroneous, inconsistent with the regulation, nor inconsistent with prior agency interpretations. Therefore, I uphold their reading of the bypass provision.

For the foregoing reasons, it is hereby

**ORDERED THAT**

Plaintiffs' joint motion for partial summary judgment (Doc. 229) be, and hereby is, granted: any bypass which occurs because of inadequate plant capacity is unauthorized under the Bay View Plant's permit and the Clean Water Act to the extent that there are "feasible alternatives," including the construction or installation of additional treatment capacity.

**So ordered.**