**SIERRA CLUB, a California nonprofit corporation, Plaintiff,**

v.

**UNION OIL COMPANY OF CALIFORNIA, a California corporation, Defendant.**

No. C 84–3435 SC.

United States District Court, N.D. California.

Dec. 16, 1988.

On Motion to Reconsider May 17, 1989.

Stephan C. Volker, Sierra Club Legal Defense Fund, Roger Beers and Mary Hackenbracht, Office of the Atty. Gen., San Francisco, Cal., for plaintiff.

John F. Barg and R. Christopher Locke, Landels, Ripley & Diamond, San Francisco, Cal., for defendant.

### ORDER RE CROSS–MOTIONS FOR SUMMARY JUDGMENT and MOTION TO AMEND COMPLAINT

CONTI, District Judge.

### PROCEDURAL HISTORY

On June 4, 1984, the Sierra Club ("Sierra") brought a citizen enforcement action, pursuant to section 505 of the Clean Water Act, 33 U.S.C. § 1365(a), against Union Oil Company of California ("Union Oil"), alleging that Union Oil violated the terms of its National Pollutant Discharge Elimination System ("NPDES") permit on seventy-six

occasions during the period between April 1979 through December 1983. Sierra moved to amend its complaint to add additional allegations of permit violations, some reported by Union Oil as occurring after March 30, 1979, some reported by Union Oil as occurring before March 30, 1979, and some never reported by Union Oil. This court denied Sierra's motion to amend. After a five day bench trial, this court found no violations in Union Oil's NPDES permit. The Ninth Circuit Court of Appeals reversed this court's finding of no liability for seventy-four of the exceedances alleged in the original complaint, and reversed the court's denial of leave to amend the complaint, except as to violations about which Sierra knew or should have known when it filed the original complaint. The case was remanded back to the district court for a determination of penalty for the seventy-four exceedances, and for a factual determination regarding the other two alleged violations. *Sierra Club v. Union Oil Co. of California,* 813 F.2d 1480, 1494 (9th Cir.1987) (*"Sierra Club I"*).

The Supreme Court vacated this Ninth Circuit decision in *Union Oil Co. v. Sierra Club,* — U.S. —, 108 S.Ct. 1102, 99 L.Ed.2d 264 (1988), and remanded the matter for further consideration by the Ninth Circuit in light of *Gwaltney v. Chesapeake Bay Foundation,* 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987). On remand, the Ninth Circuit reinstated its judgment in *Sierra Club I,* and amended that judgment by adding to its remand order that "Union Oil's liability for past violations is subject to Sierra Club's ability to prove the existence of ongoing violations or the reasonable likelihood of continued violations in accordance with *Gwaltney v. Chesapeake Bay Foundation,* 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987) and the instant order of this court." *Sierra Club v. Union Oil Co. of California,* 853 F.2d 667 (9th Cir.1988) (*"Sierra Club II"*).

This matter is presently before this court on remand from the Ninth Circuit. The parties have made cross-motions for summary judgment on the issue of whether Union Oil was "in violation" of its permit as of June 4, 1984, the day the original complaint was filed, and therefore whether Union Oil is liable for the seventy-four violations. Sierra also moves for partial summary judgment against Union Oil for 126 alleged violations of Union Oil's NPDES permit, reported by Union Oil, occurring between January 1, 1984 and February 29, 1988. In addition, Sierra seeks leave to file a First Amended Complaint, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.

## LEGAL STANDARDS

This court is bound by the mandate set forth by the Ninth Circuit Court of Appeals in *Sierra Club I* and *Sierra Club II.* Those decisions represent binding precedent specific to this case, and this court must proceed in accordance with the law of this case as was established by the appellate court. *See Matter of Beverly Hills Bancorp,* 752 F.2d 1334 (9th Cir.1984).

■ In determining whether summary judgment is appropriate, this court must consider whether, in light of the Ninth Circuit's mandate, there is a genuine issue of material fact, or whether the movant is clearly entitled to prevail as a matter of law. Fed.R.Civ.P. 56(c); *Jung v. FMC Corp.,* 755 F.2d 708, 710 (9th Cir.1985). Once a summary judgment motion is made and properly supported, the adverse party may not rest on the mere allegations of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Myrtle Nell Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment. *California Architectural Building Products,*

*Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987).

## ANALYSIS

### *Amendment of Complaint*

Sierra seeks leave from this court to file a First Amended Complaint, alleging additional violations by Union Oil of its NPDES permit. In its reinstated opinion, the Ninth Circuit held that "Sierra Club should be allowed to amend to include all violations except for the five about which it knew or should have known when it filed the original complaint." *Sierra Club I,* 813 F.2d at 1493. The Ninth Circuit held that "leave to amend shall be freely given when justice so requires," and that there is "no basis under the law of this circuit to deny the amendment." *Id.*

■ Union Oil opposes Sierra's motion to amend its complaint with the argument that Sierra Club is required under 33 U.S.C. § 1365(b)(1)(A) to provide Union Oil with sixty days notice before Sierra may allege these additional instances of noncompliance. However, the Ninth Circuit has clearly held in this case that, as to those amendments which were based upon facts contained in Union Oil's own records and reported by Union Oil itself, "Union Oil had notice of the facts. Thus, there is no prejudice to Union Oil." *Id.* As to those amendments alleging additional unreported violations, the Ninth Circuit held that because "the violations included in the proposed amendment relate to the same subject matter as the original complaint, ... Sierra Club should be allowed to amend ..." *Id.* The Ninth Circuit did not find § 1365(b)(1)(A) to be a jurisdictional bar.

■ Union Oil also opposes Sierra's motion to amend, notwithstanding the Ninth Circuit mandate, claiming that Sierra is barred from pursuing these violations because the State of California is "diligently prosecuting" Union Oil for many of the violations alleged in Sierra's proposed First Amended Complaint. Union Oil claims that the case of *State of California, ex rel., California Regional Water Quality Control Board v. Union Oil of California,* Civil No. 86–6063–SC, bars Sierra's claim under 33 U.S.C. § 1365(b). However, § 1365(b)(1)(B) acts to bar citizen suits commenced *after* the state has commenced and is diligently prosecuting its suit. The statutory language of § 1365(b) is clear to this effect. Because the complaint to which this proposed amendment relates was filed in 1984, two years before the State began its "diligent" prosecution, § 1365(b)(1)(B) is not a bar. Moreover, to uphold Union Oil's newfound impediment to Sierra's lawsuit would clearly frustrate, not aid, the judicial process, as this court has been specifically directed by the Ninth Circuit Court of Appeals to consider Sierra's amended complaint and to determine whether Union Oil's violations of its NPDES permit are ongoing.

Sierra Club has removed from its proposed First Amended Complaint those alleged violations that the Ninth Circuit disallowed in *Sierra Club I.* Therefore, in accordance with the Ninth Circuit's mandate, Sierra's motion for leave to file its First Amended Complaint is HEREBY GRANTED.

### *Cross–Motions for Summary Judgment*

Both parties have filed cross-motions for summary judgment regarding the remanded issue of whether Union Oil is liable for the seventy-four violations alleged in Sierra's original complaint.[1] The Ninth Circuit has mandated that Union Oil is liable for these violations, conditioned on a determination by this court that the violations were ongoing or that there is a reasonably likelihood that the violations will continue to occur. *Sierra Club I, Sierra Club II.* If the seventy-four violations are determined to be "past" violations rather than "ongoing" violations, as defined by *Sierra Club II* and the Supreme Court's decision in *Gwaltney,* then Union Oil is not liable for those seventy-four violations in this citizen enforcement action. 33 U.S.C.

---

1. These cross-motions for summary judgment concern liability only. If liability is found, an evidentiary hearing must be had to determine the appropriate amount of penalties or other relief.

§ 1365(a); *Gwaltney*, 108 S.Ct. at 381–382; *Sierra Club II*, 853 F.2d at 671–72.

The Supreme Court in *Gwaltney* held that citizens may prevail in NPDES permit enforcement actions only where the violation is "ongoing" and not one "wholly in the past." 108 S.Ct. at 382–384. The Ninth Circuit interpreted this decision, holding that

a citizen plaintiff may prove ongoing violations either (1) by proving violations that continue on or after the date the complaint is filed, or (2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations.

*Sierra Club II*, 853 F.2d at 671, citing *Chesapeake Bay Foundation v. Gwaltney*, 844 F.2d 170, 171–72 (4th Cir.1988), *on remand from* 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987). The Ninth Circuit went on to define what may constitute a continuing likelihood of violations. The Ninth Circuit mandated that

Intermittent or sporadic violations do not cease to be ongoing until the date when there is *no real likelihood of repetition*.

*Sierra Club II*, 853 F.2d at 671 (emphasis by Ninth Circuit). In addition, the Ninth Circuit held that the district court could make a finding of "ongoing violations" or the "reasonable likelihood of continuing violations" by determining

whether the risk of defendant's continued violation had been completely eradicated when citizen-plaintiffs filed suit.

*Id.*

Therefore, this court must determine whether the seventy-four violations were "ongoing" or "reasonably likely to recur" at the time Sierra filed suit. Sierra claims that a violation is "ongoing" if a discharger continues to be in violation of its permit generally, and that the violation need not be of the same parameter. Union Oil contends that a violation is "ongoing" only if the same effluent limitation (parameter) is exceeded at the same point source due to the same problem that caused the first violation.

In light of *Sierra Club II, Gwaltney*, and 33 U.S.C. § 1365(a), this court does not adopt either of the parties' interpretations, and instead defines an "ongoing" violation as follows. The court will find a violation "ongoing" by comparing self-reported exceedances before the complaint was filed and afterwards. If the same parameter is exceeded, or a violation recurs and the cause has not been completely eradicated, then the violation will be deemed "ongoing" and liability will attach. The violations reported by Union Oil in its self-monitoring reports constitute "conclusive evidence of an exceedance of a permit limitation." *Sierra Club I*, 813 F.2d at 1492.

The seventy-four violations for which the Ninth Circuit has found Union Oil liable are set forth in Exhibit F to Union Oil's Motion for Summary Judgment, Declaration of John F. Barg. These may be grouped into categories by parameter; they document exceedances of permit limitations for phenols, settleable solids, total coliform, biological oxygen demand, total suspended solids, hexavalent chromium, total organic carbon, and visible pollution. Sierra has provided documentation that Union Oil has reported exceedances of these eight parameters since June 1984, through July 1988. *See* Exhibit 6 to Volker Declaration in Opposition to Union Oil's Motion for Summary Judgment.

Union Oil has not shown that there exists any genuine issue of material fact regarding these exceedances which Union Oil itself has reported. Union Oil claims that it has eliminated the risk of future violations caused by heavy storms, by modifying its bioplant. Union Oil states that this modification was made in December 1982. Union Oil's Reply Memorandum in Support of its Motion for Summary Judgment, at 2. However, the Ninth Circuit, in 1987, found that Union Oil's facilities are "not adequate to handle heavy rainfall." *Sierra Club I*, 813 F.2d at 1490. In addition, Sierra has documented a number of permit violations where Union Oil has claimed that "heavy rains" caused the violation. Volker Decl., Ex. 6. Union Oil also claims that the violations are not "ongoing" because Union Oil

has not lately reported an exceedance. This is not sufficient to withstand summary judgment on the issue of whether the seventy-four violations were "ongoing." The Ninth Circuit clearly mandated that "intermittent or sporadic violations do not cease to be ongoing until the date when there is no real likelihood of repetition." *Sierra Club II*, 853 F.2d at 671. There exists no genuine factual dispute concerning the conclusion that, at the time Sierra's complaint was filed, there was a likelihood that the violations would recur upon heavy rainfall.

Therefore, the court finds that the seventy-four violations are "ongoing," and under *Gwaltney* and *Sierra Club II*. Union Oil is liable for these violations. Sierra Club's motion for partial summary judgment is hereby GRANTED in this regard.

*Sierra Club's Motion for Partial Summary Judgment on Allegations in Amended Complaint*

Sierra Club also moves this court for partial summary judgment establishing Union Oil's liability for 126 violations of its NPDES permit occurring between January 1, 1984 and February 29, 1988.[2] *See* Volker Declaration in Support of Plaintiff's Motion for Summary Judgment, ¶ 3. These violations alleged in Count 1 of Sierra's First Amended Complaint have been reported by Union Oil, pursuant to the Clean Water Act and California Water Code requirements that a discharger submit self-monitoring reports ("SMRs"). 33 U.S.C. § 1318. The self-reported exceedances include effluent limitation exceedances, and noncompliance with other permit terms.

■ A discharger whose effluent exceeds its permit limitation has violated its permit, and may be found liable in a citizen enforcement suit if the exceedances are "ongoing" as defined in *Gwaltney* and *Sierra Club II, supra.* Summary judgment is appropriate where the exceedances have been self-reported by the discharger, as such reports constitute not merely prima facie evidence, but rather are "conclusive evidence of an exceedance of a permit limi-

tation." *Sierra Club I* at 1492. NPDES enforcement actions are based on strict liability, and if the citizen-plaintiff can show that the violations are "ongoing," liability will attach. *See SPIRG v. Monsanto Co.*, 600 F.Supp. 1479, 1485 (D.N.J.1985).

Union Oil raises no genuine issue of material fact that the 126 violations are not "ongoing." Union Oil has only objected to four of the fifteen parameter category violations raised by Sierra. When a motion for summary judgment is made and supported, an adverse party may not rest upon a mere denial, but instead must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). The objections which Union Oil did raise to Sierra's motion are insufficient to withstand summary judgment.

■ The company objects to violations alleged by Sierra which Union Oil reported as occurring due to "bioplant bypass," "inoperative meters," "visible oil," and "storm basin overflows." Union Oil seeks to withstand summary judgment for violations occurring within the "bioplant bypass" category by claiming that *by design* excess waters are routed around the bioplant, in violation of the NPDES permit, when water levels are too high. Union Oil claims that the violations caused by this bioplant bypass "bristle with factual issues" because the State Regional Board acquiesced to these violations for years, until very recently. The court finds that summary judgment is indeed appropriate on this issue. Union Oil's position would create a catch–22 situation: a citizen may not bring an enforcement action if a state is "diligently prosecuting" a polluter, and a citizen may not bring an enforcement action if the state never prosecuted a polluter.

■ Inoperative meters also constitute a violation of the NPDES permit. Under the permit, Union Oil is required to report its effluent exceedances. As the Ninth Circuit made clear, "the NPDES program fundamentally relies on self-monitoring.... The Act requires that each discharger holding

---

**2.** Again, Sierra Club moves only for partial summary judgment on the issue of liability. The

present motion does not seek injunctive relief, civil penalties, or costs.

an NPDES permit monitor *and report* on its compliance with the permit." *Sierra Club I,* at 1483, 1491 (emphasis added). Union Oil has provided the court with no reason to believe that there is "no real likelihood of repetition" of this violation, or that the risk of a future violation "has been completely eradicated ..." *Sierra Club II,* 853 F.2d at 671.

██ Union Oil also offers no genuine issue of material fact regarding the ongoing nature of the "visible oil" violations. Union Oil instead attempts to argue that because the visible oil was not in the San Pablo bay itself, there was not even a violation. The Ninth Circuit has clearly stated that visible oil, although not evidenced in the Bay itself, is a violation of Union Oil's permit as a matter of law. *Sierra Club I* at 1491.

██ Finally, Union Oil states that the reported permit violations due to "storm basin overflows" were caused by heavy rains, and by the California Regional Board's "pressure" on Union Oil not to allow excess flows to be routed around the bioplant. These arguments do not withstand a motion for summary judgment. The Ninth Circuit has clearly held that permit violations will not be excused simply because Union Oil's facilities are inadequate to handle heavy rainfall. *Sierra Club I* at 1490. The "pressure" the Regional Board put upon Union Oil was in accordance with Union Oil's NPDES permit. For the same reasons as stated above concerning bioplant bypasses, there appears to be a strong likelihood that violations due to storm basin overflows will recur. Summary judgment is appropriate on this count as well.

Therefore, no genuine issue of material fact exists regarding the 126 violations alleged by Sierra.[3] The court finds that Union Oil's SMRs constitute conclusive evidence that these violations occurred, and that Sierra has alleged sufficient facts, about which there is no genuine issue, that these violations are ongoing. Sierra Club's

motion for partial summary judgment is hereby GRANTED in this regard.

## CONCLUSION

In accordance with the foregoing, IT IS HEREBY ORDERED that:

(1) Plaintiff Sierra Club's motion for leave to file its First Amended Complaint is GRANTED;

(2) Plaintiff Sierra Club's motion for partial summary judgment on the issue of defendant Union Oil's liability for the seventy-four violations in the original complaint is GRANTED; and

(3) Plaintiff Sierra Club's motion for partial summary judgment on the issue of defendant's liability for the 126 reported violations of defendant's NPDES permit occurring between January 1984 and February 1988 is GRANTED.

SO ORDERED.

## ON MOTION TO RECONSIDER

On February 27, 1989, this Court called for further briefing on Union Oil's motion to reconsider that portion of the Court's December 16, 1988 Order dealing with the "bioplant bypass" issue. On December 16, 1988, in its *Order Re: Cross-Motions for Summary Judgment and Motion to Amend Complaint* ("Order"), this Court found Union Oil liable for nine episodes of reported "bioplant bypasses," holding that such bypasses violated Union Oil's permit, and further holding that the fact that the California Regional Water Quality Control Board ("Regional Board") may have acquiesced to these violations before 1985 was irrelevant to the issue of whether Union Oil could be found liable for the violations in this citizen enforcement action. Order, at 12–13.

The parties have now extensively rebriefed the bioplant bypass issue. Having fully considered all of the arguments, affidavits, and exhibits offered by counsel, the Court declines to reconsider its December

---

**3.** The Court reserves judgment on whether these 126 violations constitute 426 days of violations, as Sierra proposes.

16, 1988 Order, and finds that Union Oil's reported bioplant bypasses constitute violations of Union Oil's NPDES permit.

The Court does not find it necessary to retread all of the arguments raised by the parties. Instead, the Court will highlight the dispositive issues regarding the present controversy over the bioplant bypass.

Union Oil's 1985 NPDES permit, in effect at the time of the nine reported biological treatment plant ("bioplant") bypasses, provides that:

> Any diversion from or bypass of facilities necessary to maintain compliance with the terms and conditions of this Order is prohibited, except (a) where unavoidable to prevent loss of life or severe property damage, or (b) where excessive storm drainage or runoff would damage any facilities necessary for compliance.

Union Oil does not dispute that this provision was in effect. Rather, Union Oil's central arguments against finding that the nine bypass incidents constitute permit violations are: (a) that Sierra Club is estopped from holding Union Oil to this portion of its permit; and (b) that no "bypass" violation occurred because Union Oil *designed* its treatment plant in such a way as to make bioplant bypass sometimes necessary, and a *designed* bypass is not the sort of bypass prohibited in the NPDES permit. The Court finds neither argument persuasive.

Union Oil claims that the State of California is estopped from prosecuting Union Oil for bypassing the bioplant, because Union Oil believes that the Regional Board knew, without objecting until 1985, that Union Oil's plant design provided for occasional bypasses of the bioplant. Therefore, Union Oil argues, because the State is estopped from prosecuting the company, so is Sierra Club in this citizen enforcement action.

 Whether the equitable doctrine of estoppel will be applied against the government requires careful consideration. The Ninth Circuit has recently made clear that in addition to the traditional requirements of estoppel—that the party to be estopped knew the true facts; that he intended for his conduct to be acted upon; that the party asserting estoppel was ignorant of the true facts; and that he relied on the other's conduct to his injury—a threshold test must be applied to the facts of a particular case before estoppel will run against the government. *Watkins v. United States Army*, 875 F.2d 699, 706–09 (9th Cir.1989) (en banc). The party seeking to raise estoppel against the government must establish that (1) the government, via authorized acts of its agents, engaged in affirmative misconduct going beyond mere negligence; and (2) the injustice done to the party must outweigh the harm that will be done to the public interest if the government is estopped. *Id.*

The Court finds it highly unlikely that the second threshold estoppel requirement will ever be satisfied in the environmental enforcement arena. In *Watkins,* the Ninth Circuit held that the government was estopped from barring Watkins' re-enlistment into the Army, finding that "the injury to plaintiff from having relied on the Army's approval of his military career—and being denied it now—is the loss of his career. The harm to the public interest if reenlistment is not prevented is nonexistent." 875 F.2d at 709. In the case at hand, the potential harm to the public interest in pollution-free waters greatly outweighs Union Oil's interest in not spending money to redesign its treatment plant.

But the Court does not base its rejection of Union Oil's estoppel argument solely on this ground. The Court also reiterates its holding in the December 16, 1988 Order, that a citizen enforcement action may be maintained where the State has known that a company was violating its permit, and has apparently acquiesced to these violations. Indeed, this is the purpose behind the citizen enforcement provisions of the Clean Water Act—to ensure that our environmental laws are enforced even where a state or the federal government have not been diligent in their roles. This Circuit treats citizen enforcement actions "liberally, because they perform an important public function.... [C]itizens should be unconstrained to bring these actions and the courts should not hesitate to consider

them." *Sierra Club v. Chevron U.S.A., Inc.,* 834 F.2d 1517, 1525 (9th Cir.1987). *Cf. Chesapeake Bay Foundation v. Bethlehem Steel Co.,* 652 F.Supp. 620, 632 (D.Md.1987); *SPIRG v. Georgia–Pacific Corp.,* 615 F.Supp. 1419, 1427 (D.N.J.1985).

▮ Union Oil's "design" arguments are similarly unavailing. Union Oil's NPDES permit, on its face, prohibits bypass, except in two defined circumstances: where bypass is unavoidable to prevent loss of life or severe property damage; or where excessive storm drainage or runoff would damage any facilities necessary for compliance. Union Oil does not claim that its bypasses fall under either of these two exceptions; instead, Union Oil in essence argues that a third exception must be read into its permit which would allow bypass "if the company designs its plant making bypass necessary." The Court declines to imply such an exception into the permit. If Union Oil desired its permit to allow it to route unsegregated waste water flow in excess of 2500 gpm around its bioplant, Union Oil should have commenced an administrative challenge to its NPDES permit. It may not attempt to modify its permit here in defense to a citizen enforcement action. *See Connecticut Fund for the Environment v. Upjohn Co.,* 660 F.Supp. 1397, 1413 (D.Conn.1987); *Connecticut Fund for the Environment v. Job Plating Co.,* 623 F.Supp. 207, 216–217 (D.Conn.1985).

Union Oil spends much time arguing that a bypass "by design" is not "conduct" or is not "intentional," and that therefore Union Oil's "designed" bypasses do not violate the bypass prohibition in its permit. This reasoning misses the point that *because* Union Oil designed its plant to require bioplant bypass during excess flow, Union Oil's bypasses *were* intentional.[1]

The Court also finds that a bypass does not become "permissible" or "non-reportable" if it later appears that no effluent limitations or other permit parameters were exceeded. Any other interpretation would render the bypass prohibition mean-

ingless, a redundancy on top of the effluent limitation provisions. As the Court declined in *Natural Resources Defense Council v. E.P.A.,* 822 F.2d 104 (D.C.Cir. 1987), so does this Court decline to hold the bypass provision meaningless. The bypass prohibition serves as a prophylactic tool for maintaining and controlling the biological integrity of the state's waters, by prohibiting bypass *regardless* of whether effluent limitations later turn out not to have been exceeded due to the bypass. *See N.R.D.C.,* 822 F.2d at 123–125.

In accordance with the foregoing, the Court hereby sustains its December 16, 1988 Order, specifically, the following portion dealing with the bioplant bypass issue:

> Union Oil seeks to withstand summary judgment for violations occurring within the "bioplant bypass" category by claiming that *by design* excess waters are routed around the bioplant, in violation of the NPDES permit, when water levels are too high. Union Oil claims that the violations caused by this bioplant bypass "bristle with factual issues" because the State Regional Board acquiesced to these violations for years, until very recently. The court finds that summary judgment is indeed appropriate on this issue. Union Oil's position would create a catch–22 situation: a citizen may not bring an enforcement action if a state is "diligently prosecuting" a polluter, and a citizen may not bring an enforcement action if the state never prosecuted a polluter.

Order, at 12–13.

IT IS SO ORDERED.

---

1. Hence the phrase "by design," meaning, done purposefully, in accordance with a preconceived plan. Webster's dictionary states that "plan" and "intention" are synonyms for "design."