DEFENDERS OF WILDLIFE, George Marsik, Jerry Van Gasse, and James A. Slingluff, Plaintiffs,

v.

Carol BROWNER, Administrator, United States Environmental Protection Agency; Felicia Marcus, Regional Administrator, EPA Region IX; and United States Environmental Protection Agency, Defendants.

No. CIV 93–234 TUC ACM.

United States District Court,
D. Arizona.

April 27, 1995.

David S. Baron, Tucson, AZ, for plaintiffs.

Karen Egbert, Washington, DC, for defendants.

## ORDER

MARQUEZ, Senior District Judge.

Plaintiffs, Defenders of Wildlife *et al.* (Defenders *et al.*), filed this action under the citizen's suit provision[1] of the Clean Water Act (CWA), Section 505(a)(2), 33 U.S.C. 1365(a)(2), which reads in pertinent part:

(a) Authorization; jurisdiction

Except as provided in subsection (b) of this section [regarding 60 day notice requirement] and section 1319(g)(6) of this title [regarding enforcement actions], any citizen may commence a civil action on his own behalf—

\* \* \* \* \* \*

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter *which is not discretionary* with the Administrator. (emphasis added)

The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, ... to order the Administrator to perform such an act or duty, as the case may be....

Citizen suits may be filed if the EPA fails to perform an act or duty which is mandated by the CWA.

Here, Plaintiffs invoke the CWA § 303(c), 33 U.S.C. 1313(c) *et seq.*, of the CWA which provides that from time to time, but at least once each 3–year period beginning October 18, 1972, the State shall hold public hearings and, as appropriate, modify and adopt water quality standards.[2] 33 U.S.C. 1313(c)(1). All revised or new standards shall be submitted to the Administrator. 33 U.S.C. 1313(c)(2). If within 60 days of the submission, the Administrator determines that the revised or new standard meets the requirements of this chapter, such standard shall thereafter be the water quality standard for the State. 33 U.S.C. 1313(c)(3). If the Administrator determines that the standard does not satisfy the requirements of this chapter, the Administrator "shall not later than the 90th day after the date of submission of such standard, notify the State and specify the changes to meet such requirements." *Id.* Thereafter, the State has 90 days to adopt the changes or the Administrator shall promulgate such standard. *Id.* Promulgation shall be pursuant to paragraph (4) of the subsection, as follows:

(4) The Administrator shall *promptly* prepare and publish proposed regulations setting forth a revised or new water quality standard for the navigable waters involved—(emphasis added)

(A) if a revised or new water quality standard submitted by such State under paragraph (3) of this subsection for such waters is determined by the Administrator not to be consistent with the applicable requirements of this chapter, or

(B) in any case where the Administrator determines that a revised or new

1. Congress modeled citizen suit provision of CWA after same provision in Clean Air Act; cases construed *in pari materia*. *Sierra Club v. Thomas*, 828 F.2d 783, 787 n. 34 (D.C.Cir.1987); *NRDC v. Train*, 510 F.2d 692, 699–701 (D.C.Cir. 1974).

2. A water quality standard is the method of expressing the desired condition of a waterway. The standard generally designates the uses of the waterway, the pollutant concentration level representing a quality of water that will support the particular designated uses, and antidegradation policy to protect existing uses and high quality waters.

standard is necessary to meet the requirements of this chapter.

The Administrator shall promulgate any revised or new standard under this paragraph not later than ninety days after he publishes such proposed standards, unless prior to such promulgation, such State has adopted a revised or new water quality standard which the Administrator determines to be in accordance with this chapter.

33 U.S.C. 1313(c)(4).

██ The State of Arizona revised and submitted its proposed standards to the EPA on February 19, 1992. On March 2, 1992, within the allocated 60 days, EPA acted to approve certain of the standards. Other approvals were made in April and July of 1992. The 90 days within which the EPA was to disapprove standards passed and the EPA failed to notify the State of necessary changes. On August 27, 1992, Defenders notified the EPA that it objected to the partial action taken by the EPA and called on the EPA to perform its "nondiscretionary" duty to take final action on the remainder of Arizona's water quality standards. Specifically, it called on the EPA to disapprove Arizona's proposed standards.[3] April 20, 1993, Defenders filed this action.

On September 9, 1993, EPA disapproved certain of the State's standards[4] and informed Arizona that it would take final action regarding the remaining standards after it completed a consultation with U.S. Fish & Wildlife Service (USF & WS) regarding the Endangered Species Act § 7. Arizona responded on November 8, 1993, complaining of the delay and informed the EPA that Arizona would not take action within the

requisite 90–days to adopt the changes specified in EPA's disapproval letter. Arizona objected to taking of piecemeal action on any necessary revisions because of EPA's partial disapproval of water quality standards. Arizona notified EPA that it was deferring any changes until after final action was taken on the remaining standards.

On February 16, 1994, the USF & WS issued its opinion on EPA's proposed action regarding Arizona's water quality standards. On April 29, 1994, the EPA issued its final action approving and disapproving the remaining portions of Arizona's standards.[5] Arizona has not made any changes to the standards.[6] Therefore, pursuant to the 90–day time limit for the State to act, 33 U.S.C. 1313(c)(3), the Administrator's duty to "promptly" prepare and publish proposed regulations for Arizona existed as of *December 9, 1993* for standards disapproved on September 9, 1993, and existed as of *July 29, 1994* for standards disapproved on April 29, 1994.

██ Plaintiffs invoke this Court's jurisdiction under CWA § 505(a)(2), 33 U.S.C. 1365(a)(2) which provides that a citizen suit may be brought in district court where an agency violates a clearly mandated, nondiscretionary statutory duty. *Kennecott Copper Corp. v. Costle*, 572 F.2d 1349, 1353–55 (9th Cir.1978). Thus limited, citizen suits do not extend to areas of enforcement over which the Administrator has discretion. *Id.* at 1353. Congress intended to limit the number of citizen suits which could be brought against the Administrator and so consciously struck a balance to minimize disruption of

---

**3.** This Court finds Defenders' letter of August 27, 1993, sufficient to satisfy the requisite 60–day notice provisions of 33 U.S.C. § 1365(b)(2). *See* letter at SF supporting D's C–MSJ at attachment. Once Plaintiff provided notice of a violation, the matter may be pursued, including related violations without filing additional notices. *Sierra Club v. Union Oil Company*, 716 F.Supp. 429, 432 (N.D.Cal.1988); *Kitlutsisti v. Arco Alaska*, 592 F.Supp. 832 (9th Cir.1984).

**4.** EPA disapproved the State's exclusion of mining-related man-made surface impoundments, ditches and conveyances; the lack of fish consumption as a designated use for certain water

bodies; the lack of implementation procedures for the narrative nutrient standard; and the lack of biomonitoring implementation procedures.

**5.** Thereafter, the parties stipulated to dismissal by Consent Decree of the Plaintiff's allegation that the EPA had failed to act to approve or disapprove the State's proposed standards.

**6.** EPA reports that Arizona has agreed to make the necessary changes during its current 3–year review process. (EPA's Opposition to Ps' MSJ at attachment, ¶ 6.) The record does not reflect the schedule for Arizona's current triennial review.

the CWA's complex administrative process. *Kennecott,* 572 F.2d at 1353.

Generally, where timeliness is at issue, statutory provisions which do not set bright-line deadlines fall outside the reach of a citizen's suit. *See e.g., NRDC v. Thomas,* 885 F.2d 1067, 1075 (2nd Cir.1989) (provision that the Administrator revise a list of air pollutants "from time to time" is discretionary). A clear cut non-discretionary duty of timeliness is imposed where a statute categorically requires that all specified action be taken by a date-certain deadline or if such a deadline is readily-ascertainable by reference to some fixed date or event. *Sierra Club v. Thomas,* 828 F.2d 783, 790, & n. 58 (D.C.Cir. 1987). It is not enough that the deadline can be ascertained from a set of inferences based upon the overall statutory scheme. *Id.* at 791. "[I]t is highly improbable that a deadline will ever be nondiscretionary, i.e. clearcut, if it exists only by reason of an inference drawn from the overall statutory framework." *Id.* Such an instance will be very rare, but there may be "isolated occasions when, upon extensive analysis, one can conclude that an inferable deadline imposes a mandatory duty of timeliness." *Id.*

For example, in *Alaska Center for the Environment v. Reilly,* 762 F.Supp. 1422 (W.D.Wash.1991), the district court considered § 303(d) of CWA, which is similar to subsection (c). Subsection d of the chapter provides certain time limits within which a State must submit to the EPA total maximum daily load (TMDL) pollution limits for its waters. 33 U.S.C. 1313(d). Like subsection c, subsection d sets time limits by which the EPA shall approve or disapprove the TMDL limits submitted by the State. Where the State's TMDLs are approved, they are incorporated into the State's plan; but if disapproved, the Administrator has 30 days from the date of disapproval to establish the necessary TMDL limits for the State and the State must thereafter include the limits set by the EPA in its plan. 33 U.S.C. 1313(d)(2).

In *Alaska,* the State completely failed over a 12–year period to submit TMDL limits to the EPA. On this point, the statute was silent as to EPA's course of action. EPA argued that consequently it had discretion to act or not; EPA had not acted to promulgate TMDLs for Alaska. The district court found that Alaska's absolute failure to submit proposed TMDLs amounted to a "constructive submission" of no TMDLs. Accordingly, under § 303(d) of the CWA, 33 U.S.C. 1313(d)(2), the EPA had 30 days to promulgate TMDLs for Alaska.[7]

The sole question before a district court in a citizen suit such as this is whether the agency failed to comply with a date-certain statutory deadline. *Sierra Club v. Thomas,* 828 F.2d at 791. Citizen suits address *per se* violations of timeliness where Congress has issued a "categorical mandate that deprives [the agency] of all discretion over the timing of its work." *Id.* In *Alaska,* for example, once the district court concluded that by failing for 12 years to submit TMDLs for the State, Alaska had "constructively" submitted no TMDLs, the statute categorically mandated a 30–day time limit for the EPA to establish TMDLs for the State. 33 U.S.C. 1313(d)(2). Understood this way, *Alaska* addressed enforcement of a date-certain statutory mandate.

Here, the district court cannot resolve the matter by simply answering the question of whether the EPA failed to comply with some date-certain deadline. Inapposite, § 303(c)(4) requires that the agency act "promptly." This is not a categorical mandate from Congress that deprives EPA of all discretion over the timing for preparing and publishing proposed water quality regulations for Arizona. Here, principles of construction cannot serve to trigger mandatory categorical date-certain deadlines. To resolve this case, the Court must define the limits of EPA's discretion by looking to the legislative language, history, and to the stat-

---

7. In *Alaska,* EPA did not appeal the district court's finding that it was in violation of a mandatory requirement under CWA, but instead challenged the breadth of the court's equitable relief. The court of appeals rejected EPA's argument that the statute relegates the pace at which TMDLs are to be established entirely to the EPA's discretion and affirmed the district court. *Alaska Center for the Environment v. Browner,* 20 F.3d 981 (9th Cir.1994).

utory scheme as a whole. This goes well beyond a clear-cut factual determination of whether a violation did or did not occur. Therefore, this Court concludes that allowing Plaintiffs to go forward under the citizen suit provisions of the CWA would upset the delicate balance struck by Congress to permit citizen enforcement only of clear-cut agency violations and defaults. *Sierra Club v. Thomas,* 828 F.2d at 791.

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED;** Plaintiffs' Motion for Summary Judgment is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs are granted leave to file an Amended Complaint to add a claim under the APA; Plaintiffs shall file their Amended Complaint within 30 days of the date of this Order.