**NATIONAL WILDLIFE FEDERATION and Michigan United Conservation Clubs, Plaintiffs,**

v.

**Valdas V. ADAMKUS, in his capacity as Regional Administrator, and Carol Browner, in her capacity as Administrator, U.S. Environmental Protection Agency, Defendants.**

No. 4:95–CV–131.

United States District Court, W.D. Michigan, Southern Division.

May 28, 1996.

Mark Van Putten, National Wildlife Federation, Great Lakes Natural Resource Center, Ann Arbor, MI, M. Carol Bambery, Lansing, MI, for National Wildlife Federation, Michigan United Conservation Clubs.

Joshua. M. Levin, U.S. Department of Justice, Environmental Defense Section, Washington, DC, for Valdas A. Adamkus.

Michael L. Shiparski, Asst. U.S. Attorney, Michael H. Dettmer, United States Attorney, Grand Rapids, MI, Joshua M. Levin, U.S. Department of Justice, Environmental Division, Washington, DC, for Carol M. Browner.

## OPINION

QUIST, District Judge.

This is a civil case wherein plaintiffs National Wildlife Federation and Michigan United Conservation Clubs filed suit against defendants Carol Browner and Valdas Adamkus of the Environmental Protection Agency ("EPA") challenging the procedures EPA utilized in approving revisions made by the State of Michigan to its federally approved wetlands program. Count I of the Complaint alleges that EPA's failure to commence proceedings to disapprove Michigan's wetlands program violated a nondiscretionary duty imposed by § 404 of the Clean Water Act ("CWA"), 33 U.S.C. § 1344. Count II alleges that EPA's approval of the revisions without considering and responding to public comment violated both the CWA and the Administrative Procedure Act ("APA"), 5 U.S.C. § 553. Plaintiffs seek declaratory and injunctive relief requiring EPA to immediately commence withdrawal proceedings or to republish its notice in the Federal Register and respond to public comment. This

matter is before the Court on defendants' motion to dismiss and plaintiffs' motion for summary judgment.

### Facts

Congress enacted the CWA to safeguard the integrity of this Nation's water supply. The CWA regulates the discharge of pollutants into the waters of the United States. Discharges of dredged or fill material require a permit under § 404 of the CWA. The Secretary of the Army is authorized to issue these permits unless the authority of the "wetlands program" has been transferred from the Army Corps of Engineers to an authorized state. States may seek the authority to administer § 404 and issue permits pursuant to § 404(g). The criteria governing the EPA's approval of a state's application to receive the authority to administer its own wetlands program is found in § 404(h). EPA may withdraw its approval of a state's wetlands program pursuant to § 404(i). EPA's regulations implementing the CWA's state program provisions are found within 40 C.F.R. § 233.1 et seq.

In 1984, Michigan became the first state to receive EPA approval of its wetlands dredge-and-fill permitting program. Since that date, Michigan's wetlands program has been administered by the Michigan Department of Natural Resources ("MDNR"). In 1991, Governor John Engler issued Executive Order 1991–31 ("1991 Order"), which abolished some state agencies and reorganized others, such as the MDNR.[1]

On December 3, 1991, plaintiffs requested by letter that EPA undertake a "formal review" of whether the proposed changes would undermine the continued compliance of Michigan's wetlands program with minimum federal standards. This request was reiterated in letters dated September 3 and October 11 of 1993. In November 1993, EPA asked Michigan to submit information on the revisions to the wetlands program initiated by the 1991 Order. EPA did a

preliminary review of Michigan's changes. After conducting its preliminary review, EPA determined that the 1991 Order did not constitute a substantial revision to Michigan's federally approved wetlands program.

On April 21, 1994, EPA published a notice in the Federal Register requesting public comment concerning "whether any substantial revisions to the State wetlands program were effected by the MDNR reorganization." 59 Fed.Reg. 19,009 (Apr. 21, 1994). EPA contends that while it was not obligated to seek public comment, it elected to do so in light of considerable public interest in the matter. EPA specified that comments were to be limited to the changes initiated by the 1991 Order. In response, plaintiffs submitted written comments on May 20, 1994, which plaintiffs contend documented a number of substantial changes to Michigan's wetlands program since its original approval. Plaintiffs maintain that a number of these changes are sufficient under EPA regulations to warrant withdrawal of EPA approval of Michigan's program. Plaintiff summarized these changes as follows:

1. Michigan's program submission specifically referenced the role of the Michigan Water Resources Commission ("WRC") even though the WRC was abolished in the 1991 Order.

2. Michigan's program submission failed to describe significant court rulings that likely affected the scope of Michigan's wetlands permit program.

3. Michigan's program submission failed to describe critical changes in its 'feasible and prudent alternatives' analysis of permit applications.

4. Michigan's program description failed to describe significant changes in opportunities for public participation in Michigan's wetlands programs.

EPA contends that it addressed plaintiffs' comments which related to the 1991 Order,

1. Enforcement of the 1991 Order was enjoined by both the Michigan trial and appellate courts until the Order was upheld by the Michigan Supreme Court in *House Speaker v. Governor*, 443 Mich. 560, 563, 506 N.W.2d 190 (1993). In 1994, the principal changes set forth in the 1991

Order were codified at M.C.L. §§ 324.101 through 324.21551. On July 31, 1995, after the instant complaint was filed, Governor Engler issued Executive Order 1995–18 ("1995 Order"), which further restructures Michigan's environmental administrative agencies.

but did not address the substance of "unrelated" comments, such as those pertaining to the "full and complete" changes in Michigan's wetlands program since 1984, the effect post–1984 state court rulings had on regulatory takings, and the "consultation requirements" of the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531, 1536.

On November 25, 1994, without holding a public hearing, EPA published its final approval of the revisions to the wetlands program that the 1991 Order would institute. In its notice, EPA stated that it would consider plaintiffs' "unrelated" comments in the context of EPA's "ongoing oversight" of Michigan's wetlands program. Following the issuance of a May 1995, notice of intent to sue, plaintiffs filed the instant suit during July of 1995.

*Standards of Review*

**A.   Standard for Dismissal**

An action may be dismissed if the complaint fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The moving party has the burden of proving that no claim exists. Although a complaint is to be liberally construed, it is still necessary that the complaint contain more than bare assertions of legal conclusions. *Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1240 (6th Cir.1993). All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party. 2A James W. Moore, *Moore's Federal Practice,* ¶ 12.07[2.5] (2d ed. 1991). The Court need not, however, accept unwarranted factual inferences. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987). Dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

Dismissal is also proper if the complaint fails to allege an element necessary for relief or "if an affirmative defense or other bar to relief is apparent from the face of the complaint, such as the official immunity of the defendant...." 2A James W. Moore,

*Moore's Federal Practice,* ¶ 12.07[2.5] (2d ed. 1991).

"In practice, 'a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory.'"

*Allard,* 991 F.2d at 1240 (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988)).

**B.   Limitations of the Scope of Judicial Review**

▪ "The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984). "[T]he court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2781. "[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782. In such circumstances, a court is to uphold the agency interpretation unless it is "plainly erroneous or inconsistent with the regulation." *United States v. Larionoff,* 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977).

▪ However, the Supreme Court has "never applied the principle of [deference] to agency litigating positions that are wholly unsupported by regulations, rulings, or administrative practice." *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 212, 109 S.Ct. 468, 473–74, 102 L.Ed.2d 493 (1988). Thus, this Court will accord a great deal of deference to EPA interpretations of § 404 of the CWA and § 553 of the APA where those statutes are silent or ambiguous, Congress' intent is unclear, *and* where EPA's interpretations have a basis in either regulations, rulings, or administrative practice. In all other circumstances, no deference will be given to the EPA's statutory interpretation.

*Discussion*

## I. Clean Water Act Claims

### A. *Standing*

In certain circumstances, the CWA allows private actions to be filed against an EPA administrator by a person having an interest which may be adversely affected. These "citizen's suits" may be filed "against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator." 33 U.S.C. § 1365(a)(2). Such actions may not proceed prior to 60 days after the Administrator is given notice of the impending lawsuit. 33 U.S.C. § 1365(b)(2). At issue is whether EPA failed to perform a nondiscretionary duty under the CWA.

### B. *Count I*

■ In Count I, plaintiffs allege that EPA failed in its nondiscretionary duty "to commence proceedings to disapprove the State of Michigan's revised wetlands program" pursuant to § 404(i) of the CWA.[2] (Complaint, Count I, at ¶ 40.) EPA maintains that after reviewing Michigan's program description, it determined that the revisions to the state's wetlands program created by the 1991 Order were not substantial, and that EPA was therefore under no obligation to either invite public comment or commence proceedings to disapprove Michigan's revised wetlands program.

On its face, § 404(i) only triggers a nondiscretionary duty to withdraw approval once EPA has determined after public hearing that the state's administration of the program fails to comply with the CWA, notifies the state, and has given the state a reasonable amount of time to take corrective action.

Section 404(i) does *not* explicitly require EPA to hold public hearings from time to time in the first instance to determine whether a State is administering a program in accordance with § 404. With regard to the implementing regulations, the Code of Federal Regulations section regarding the commencement of withdrawal proceedings states in pertinent part:

> 1) Order. The Administrator *may* order the commencement of withdrawal proceedings [1] on the Administrator's initiative or [2] in response to a petition from an interested person alleging failure of the State to comply with the requirements of this Part as set forth in subsection (b) of this section. . . .

40 C.F.R. § 233.53(c)(1) (emphasis added). The plain language of the regulation says that it is within the Administrator's discretion to order the commencement of withdrawal proceedings in response to a petition from the interested person, regardless of the content of the petition. *See Rose v. Rose*, 481 U.S. 619, 626–27, 107 S.Ct. 2029, 2034, 95 L.Ed.2d 599 (1987) (holding that "may" is a permissive term expressing discretionary power).

Thus, EPA was under no mandatory duty to commence withdrawal proceedings. While plaintiffs argue that EPA had a duty to make a threshold determination of whether or not to commence § 404(i) proceedings, EPA's decision to approve the revisions demonstrated that EPA determined that withdrawal proceedings were not necessary in light of the 1991 Order.

Plaintiffs, however, contend that to gain approval for its wetland program, a state must make a "full and complete description" of its program under § 404(g) and that noth-

2. This provision states as follows:
(i) Withdrawal of approval
Whenever the Administrator determines after public hearing that a State is not administering a program approved under section (h)(2)(A) of this section, in accordance with this section, including, but not limited to, the guidelines established under subsection (b)(1) of this section, the Administrator shall so notify the State, and, if appropriate corrective action is not taken within a reasonable time, not to exceed ninety days after the date of the receipt of such notification, the Administrator shall (1) withdraw approval of such program until the Administrator determines such corrective action has been taken, and (2) notify the Secretary that the Secretary shall resume the program for the issuance of permits under subsections (a) and (e) of this section for activities with respect to which the State was issuing permits and that such authority of the Secretary shall continue in effect until such time as the Administrator makes the determination described in clause (1) of this subsection and such State again has an approved program.

ing in § 404 allows for piecemeal review of a wetlands program, whereas other CWA provisions, such as § 402, expressly allow for piecemeal review. Further, plaintiffs note that the Code of Federal Regulations specify that "[a]ny State that seeks to administer a 404 program under this part shall submit . . . [a] complete program description, as set forth in § 233.11." 40 C.F.R. § 233.10(b). Plaintiffs argue that their public comments clearly demonstrated that Michigan's program submission was incomplete and deficient on its face in that the submission failed to describe changes in Michigan's program which under EPA regulations were sufficient to warrant withdrawal of federal approval under § 404(i). Plaintiffs argue that EPA cannot make a determination of a program's sufficiency if the submission is incomplete and that EPA was required to commence withdrawal proceedings pursuant to § 404(i).

EPA responded that it has no duty to review the state's entire wetlands program whenever the state decides to revise a portion of the program. EPA contends that the "full and complete" review occurs before EPA initially transfers the authority to run its own § 404 wetlands program to the state, not when a state makes a minor revision to an already existing program. EPA argues that it acted pursuant to 40 C.F.R. § 233.16(d), which concerns the "Procedure for revision of State [§ 404] programs." Subsection (d) states in pertinent part that:

(1) The Director shall submit a modified program description or other documents which the Regional Administrator determines to be necessary to evaluate whether the program complies with the requirements of the Act and this Part.

(2) *Notice of approval of program changes which are not substantial revisions may be given by letter from the Regional Administrator to the Governor or his designee.*

(3) *Whenever the Regional Administrator determines that the proposed revision is substantial, he shall publish and circulate notice to those persons known to be interested in such matters, provide opportunity for a public hearing, and consult with the Corps, FWS, and NMFS.* The Regional Administrator shall approve or disapprove program revisions based on whether the program fulfills the requirements of the Act and this Part, and shall publish notice of his decision in the Federal Register. For purposes of this paragraph, substantial revisions include, but are not limited to, revisions that affect the area of jurisdiction, scope of activities regulated, criteria for review of permits, public participation, or enforcement capability.

(4) Substantial program changes shall become effective upon approval by the Regional Administrator and publication of notice in the Federal Register.

40 C.F.R. § 233.16 (emphasis added).

The plain language of subsection (3) invests the Regional Director with the discretion to determine whether the proposed change is substantial or not. This section of the regulation has no explicit "full and complete" description requirement. Furthermore, subsection (2) notes that EPA may approve changes which are not substantial by letter; there is no requirement to seek public comment. Public hearings need only be held under subsection (3) where the proposed change is determined to be substantial.

This Court holds that § 404 of the CWA is silent with respect to "revisions" of existing § 404 programs as opposed to when "[t]he Governor of any State desir[es] to administer its own individual and general permit program" under § 404(g). At the very least, the CWA is ambiguous regarding whether subsection (g) refers only to the circumstance when a state initially seeks to set up its own program or whether (g) is also intended to apply to revisions of existing programs after federal approval was originally obtained. Further, it is unclear whether the "complete program submission" required when a State "seeks to administer a 404 program" under 40 C.F.R. § 233.10 is required when a State attempts to revise its already approved program under § 233.16. The EPA's interpretations are based upon an existing regulation, 40 C.F.R. § 233.16(d), and will therefore be accorded its due deference absent clear Congressional intent to the contrary.

This Court agrees with plaintiffs that Congress sought to avoid a federal "shadow pro-

gram" of ill-defined, intrusive EPA involvement in overseeing an approved state permit program. Plaintiffs contend that the "ill-defined" nature of EPA's self-proclaimed "ongoing oversight" is tantamount to the establishment of a shadow program. However, this Court does not agree that EPA's interpretation of its regulations leads to such a result. In the context of this litigation, the "ongoing oversight" mentioned by EPA seems to be little more than EPA's willingness to accept public comment and leave open the possibility that the state program may be found to be noncompliant at a future date. The plain language of § 404(i) of the CWA and 40 C.F.R. § 233.53 appear to dictate this result. Further, this Court believes that requiring public hearings every time a state seeks to make insubstantial amendments to its wetlands program could result in the very intrusive EPA shadow program that the statute seeks to avoid.

Apparently, the real gist of plaintiffs' complaint is the amount of the discretion placed in the hands of the Administrator to commence withdrawal proceedings. While one could debate the merits of Congress granting such discretion to the EPA Administrator, EPA's interpretation of § 404 and the Code of Federal Regulations places this discretion in the Administrator's hands, and this Court does not consider EPA's interpretation of the CWA and its implementing regulations to be plainly wrong. Thus, with respect to Count I, this Court holds that EPA was under no mandatory duty to make a determination to commence proceedings or to actually commence proceedings to disapprove the State of Michigan's revised wetlands program. Count I will therefore be dismissed.[3]

### C. *Count II*

■ In Count II, plaintiffs allege that "EPA's refusal to respond to comments submitted by [plaintiffs] regarding changes in the State of Michigan's wetlands program violated the CWA and APA in that EPA had a nondiscretionary duty under the CWA and

an independent duty under the APA to respond on the record."

With regard to plaintiffs' CWA allegations, while 40 C.F.R. § 233.53 leaves the decision to commence withdrawal proceedings up to the discretion of the Administrator, the regulation also states that:

> (1) .... *The Administrator shall respond in writing to any petition to commence withdrawal proceedings.* He may conduct an informal review of the allegations in the petition to determine whether cause exists to commence proceedings under this paragraph.

> • • • • •

40 C.F.R. § 233.53(c)(1) (emphasis added).

Thus, the regulation clearly states that the Administrator is required to respond in writing to any petition to commence withdrawal proceedings. The Administrator is given no discretion as it regards this duty. EPA claims that because plaintiffs' alleged "petition" was merely public comment invited by EPA for the limited purpose of reviewing the effects of the 1991 Order, plaintiffs never made a formal petition under this section.

Considering that plaintiffs specifically cited 40 C.F.R. § 233.53(c)(1) in their request for withdrawal proceedings in responding to EPA's invitation to public comment, EPA's failure to construe this request as a petition under that section of the Code was not proper. Whether or not this petition "related" to the 1991 Order is not relevant. That this petition did not resemble an earlier "formal" petition filed by one of plaintiffs' counsel in an unrelated matter is similarly irrelevant. In failing to reply to plaintiffs' petition, EPA has failed to fulfill a nondiscretionary duty.

■ EPA, however, also argues that where timeliness is at issue, statutory provisions fall outside the citizens' suit jurisdiction if they do not set requirements which must be accomplished by a "date certain," either explicitly or with reference to a fixed date or event. *See, e.g., Natural Resources Defense Council, Inc. v. Thomas,* 885 F.2d 1067, 1073 (2d Cir.1989) (statute imposing a duty to

---

**3.** Because Count I will be dismissed as a matter of law, this Court will not reach the issue of whether plaintiffs exhausted their administrative remedies prior to filing suit with respect to Count I.

revise list of air pollutants "from time to time" imposes a discretionary duty). "[A] nondiscretionary duty of timeliness may arise even if a deadline is not explicitly set forth in the statute, [however,] if it is readily ascertainable from some other fixed date or event." *Sierra Club v. Thomas,* 828 F.2d 783, 790 (D.C.Cir.1987). This Court cannot find such a fixed date or event mentioned in 40 C.F.R. § 233.53(c). Furthermore, "it is highly improbable that a deadline will ever be nondiscretionary, i.e. clear-cut, if it exists by reason of an inference drawn from the overall statutory framework." *Sierra Club,* 828 F.2d at 791. This Court will decline to draw such an inference. Because there is no explicit timetable given in § 233.53(c)(1) for the Administrator to respond in writing to the petition of an interested party, Count II will also be dismissed as a matter of law with respect to plaintiffs' CWA claims. Whether EPA has delayed unreasonably in responding to plaintiffs' public comment is a claim properly reviewed under the APA. *See Defenders of Wildlife v. Browner,* 888 F.Supp. 1005, 1008 (D.Ariz.1995), *order vacated on reconsideration,* 888 F.Supp. 1003 (D.Ariz.1995).[4]

## II. Administrative Procedure Act Claims

Plaintiff alleges two APA theories under Count II: (1) EPA's refusal to consider public comments prior to approving the revised program is an illegal and reviewable final agency decision; and (2) EPA failed to discharge its statutory responsibility to respond to public comment before announcing the "rule" that Michigan's revised wetlands program was acceptable.

### A. *EPA's Refusal to Consider Plaintiffs' Comments*

■ EPA claims that Count II is mistakenly directed at EPA's alleged approval of "Michigan's revised program" as a whole when in fact EPA only approved specified revisions in the program. EPA misconstrues plaintiffs' claim. Plaintiffs have consistently alleged and argued that what is being challenged is EPA's refusal to consider plaintiffs' comments prior to EPA approving the changes instituted by the 1991 Order. (*See* Complaint at Count II; Plaintiffs' Opposition Mem. at 24.) Thus, plaintiffs are not challenging EPA's approval of the revisions or the revised program as a whole, but are challenging EPA's alleged failure to consider public comment prior to issuing its approval. EPA, however, also argues that it did reply to related public comment and was under no duty to respond to unrelated public comment. It is undisputed that EPA responded to those comments it considered to be related to the 1991 Order on November 25, 1994, at 59 Fed.Reg. 60,625.

■ As an initial matter, only final agency action, not procedural, preliminary, or intermediate action, is subject to judicial review under the APA. *See* 5 U.S.C. § 704. "As a general rule, final agency action includes 'interpretive decisions that crystalize [sic] or modify private legal rights.'" *Franklin Fed. Sav. Bank v. Director, Office of Thrift Supervision,* 927 F.2d 1332, 1337 (6th Cir.1991), *cert. denied,* 502 U.S. 937, 112 S.Ct. 370, 116 L.Ed.2d 322 (1991). Consideration of public comment is an intermediate stage in the process of creating a final agency action; it is a preliminary or procedural action subject to review upon final agency action. *Cf. Clark v. Busey,* 959 F.2d 808, 813 (9th Cir.1992) (agency inaction on petition for rule making is not ripe for review where inaction does not amount to denial). Thus, EPA's failure to respond to public comment itself is not a final agency action under the APA.

■ Furthermore, even if this Court were to conclude that the decision to respond or not to respond to public comment was a final agency action, plaintiffs' argument under this theory would still be unavailing. EPA is correct in that

---

4. In *Browner,* the court originally granted plaintiffs leave to file an amended complaint in order to add a claim under the APA. In the subsequent order, the *Browner* court vacated the previous order, and granted plaintiffs leave to file a claim for unreasonable delay to avoid jurisdictional issues involving the APA. *See Browner (II),* 888 F.Supp. at 1004. In the instant case, plaintiffs have already set forth their claims under the APA. There are no problems involving this Court's jurisdiction over these claims.

[a]n administrative agency "need not respond to every comment, but it must "respond in a reasoned manner to the comments received, to explain how the agency resolved any significant problems raised by the comments, and to show how that resolution led the agency to the ultimate rule." *Navistar Int'l Trans. Corp. v. EPA*, 941 F.2d 1339, 1359 (6th Cir.1991) (quoting *Action on Smoking and Health v. C.A.B.*, 699 F.2d 1209, 1216 (D.C.Cir.1983)). Thus, EPA's alleged final agency action—the decision to respond to significant or "related" comments, only, prior to approving the changes to the wetlands program established by the 1991 Order—would be upheld by this Court. The question of whether EPA had a duty to respond to those public comments it deemed "unrelated" to the 1991 Order is properly reviewed under plaintiffs' second APA theory.

B. *APA Rule–Making Procedures*

■■■ Both parties agree that approval by EPA of a state's program submission is a "rule" under the APA. EPA was therefore bound by the rulemaking procedures under § 553 of the APA. EPA's "responsibility to respond to public comments on proposed rulemaking is required by 5 U.S.C. § 553(c)." *Michigan v. Thomas*, 805 F.2d 176, 186 (6th Cir.1986). Failure of an agency to comply with the rulemaking requirements of APA is fatal to the validity of agency's actions. *Ohio Dept. of Human Services v. United States HHS*, 862 F.2d 1228, 1237 (6th Cir.1988). As stated earlier, an administrative agency, however, need only respond in a reasoned manner to comments which raise significant problems. *Navistar*, 941 F.2d at 1359; *see Home Box Office, Inc. v. FCC*, 567 F.2d 9, 35 n. 58 (D.C.Cir.1977) (an agency is required to address only "significant comments," comments which "if true, raise points relevant to [its] decision"), *cert. denied*, 434 U.S. 829, 98 S.Ct. 111, 54 L.Ed.2d 89 (1977). Plaintiffs claim that EPA violated § 553 of the APA when it approved the revised program in the aftermath of the 1991 Order without responding to all of the comments submitted by plaintiffs on the record.

EPA argues that its rulemaking was limited to the changes effected by the 1991 Order.

EPA argues that plaintiffs' unrelated comments were significant only as they related to future EPA action addressing the entire 404 program, but not to the approval of the revisions effected by the 1991 Order. This Court believes that requiring EPA to respond to public comment on the entirety of a State's wetlands program every time a State seeks to make insubstantial changes to the program would result in the very intensive EPA shadow program that the statute seeks to avoid. *See* Opinion, *supra*, at Part I.B (discussing the relative need for public hearings).

■■■ Section 701 of the APA provides for judicial review of agency actions except "to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701. If it is determined that either situation exists, then a court must decline to exercise jurisdiction over the matter. *Madison–Hughes v. Shalala*, 80 F.3d 1121, 1124 (6th Cir.1996) (citing *Heckler v. Chaney*, 470 U.S. 821, 828, 105 S.Ct. 1649, 1654, 84 L.Ed.2d 714 (1985)). In *Chaney*, the Supreme Court held that "even where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Madison–Hughes*, 80 F.3d at 1124 (quoting *Chaney*, 470 U.S. at 830, 105 S.Ct. at 1655)). This Court does not have a meaningful standard against which to measure the significance of the comments to which EPA responded as opposed to the comments EPA considered insignificant. As such, this Court declines to exercise judicial review.

Plaintiffs' claim must be dismissed under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction.

### ORDER

In accordance with the Opinion issued on this date,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss (docket no. 9) is **GRANTED.**

**IT IS FURTHER ORDERED** that plaintiffs' motion for summary judgment (docket no. 23) is **DENIED.**